DAN RIVER, INC., Petitioner,

v.

CAL-TOGS, INC., Respondent.

No. 77 Civ. 5394.

United States District Court,
S. D. New York.

March 2, 1978.

Kreindler, Relkin & Goldberg, New York City, for petitioner; Donald L. Kreindler, Michael D. Blutrich, New York City, of counsel.

Jack David, New York City, Freedman & Sobel, Beverly Hills, Cal., for respondent; Jack David, New York City, Gary Freedman, Elise M. Martin, Beverly Hills, Cal., of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Dan River, Inc. ("Dan River"), a Virginia corporation with its principal place of business in Virginia, has petitioned this Court for an order pursuant to 9 U.S.C. § 3 confirming and entering judgment on an arbitration award of $50,836.94 granted in its favor by a New York City arbitration panel against Cal-Togs, Inc. ("Cal-Togs"), a California corporation with its principal offices in California. Subject matter jurisdiction is additionally rooted in diversity of citizenship. 28 U.S.C. § 1332(a)(1). Cal-Togs has cross-moved to vacate the award asserting, *inter alia*, that the arbitrators exceeded the scope of their authority, engaged in procedural irregularities and misconduct, and, in the case of two of the three arbitrators, were biased. Jurisdictional objections are also proffered.

It appears that pursuant to agreement between the parties, Dan River sold and delivered to Cal-Togs quantities of textile fabrics. Cal-Togs' purchase orders for the

goods contained an arbitration clause which provided in part:

10. Any and all controversies or claims arising out of or relating to this contract shall be submitted to arbitration before the West Coast Textile Industry Arbitration Council and the arbitration of such controversies or claims shall be conducted at Los Angeles, California. The West Coast Textile Industry Arbitration Council, may, in its discretion, for convenience, transfer the arbitration proceedings to San Francisco, California. This contract in all respects shall be governed and construed by the laws of the State of California and the rules then obtaining of the West Coast Textile Industry Arbitration Council. . . . Consent is hereby given to entry of judgment upon the arbitration award in the courts of such county in California as has jurisdiction.

(Exhibit A to Freedman Affidavit in Opposition to Confirmation). Dan River's sales forms, which were sent to Cal-Togs, contained the following arbitration clause.

Any controversy arising out of or in connection with the contract herein stated shall be settled by arbitration to be held in the City of New York, N.Y., in accordance with the laws of the State of New York, pursuant to the rules of the General Arbitration Council of the Textile Industry or the American Arbitration Association as may be determined by the seller. The parties consent and submit to the jurisdiction of the Supreme Court of the State of New York or the United States District Court for the Southern District of New York. . . .

Apparently, after deliveries of the goods were made, a dispute regarding payment therefor arose between the parties. Despite the fact that Cal-Togs' purchase order provided for arbitration before the West Coast Textile Industry Arbitration Council ("WCTIAC"), Cal-Togs proceeded to institute arbitration proceedings before the American Arbitration Association ("AAA") at its Los Angeles Regional Office by filing a Demand for Arbitration therefor. Dan River filed an answer and counterclaim with the AAA and a request that the AAA transfer the arbitration proceedings to New York. This application was granted. Cal-Togs thereupon commenced an action in the Superior Court of the State of California for the County of Los Angeles seeking, *inter alia,* to preliminarily enjoin continuation of the New York arbitration proceedings and to transfer those proceedings back to Los Angeles. The California court denied the preliminary injunction and Cal-Togs voluntarily discontinued the action.

Administration of the arbitration proceedings in New York commenced in June 1976, pursuant to the Rules of the General Arbitration Council of the Textile Industry ("GACTI"), a division of the AAA. On August 10 and again on September 8, 1976, GACTI transmitted to the parties lists of arbitrators from which selections were to be made. Since Cal-Togs and Dan River could not agree on their selections from either list, GACTI advised the parties on October 6, 1976 that, pursuant to its Rules, David Stone from Cal-Togs' field and Edward O'Hayer from Dan River's field had been appointed as arbitrators. On October 14, 1976, GACTI further advised the parties of a prior business relationship between Mr. O'Hayer's company and a division of Dan River. Although Cal-Togs apparently orally objected to Mr. O'Hayer's appointment, GACTI affirmed that appointment on November 29, 1976. This action prompted Cal-Togs to object to the same by letter dated December 6, 1976; however, GACTI after reviewing the objection reaffirmed Mr. O'Hayer's appointment the following month, and then selected Gabriel Hellman, engaged in the business of piece and beck dyeing, as the third arbitrator. Apparently, no objection was made by the parties to Mr. Hellman's appointment.

In May 1977, the parties were advised that Mr. O'Hayer was no longer associated with the company involved in a prior relationship with Dan River but had changed jobs. The parties were again invited to comment on Mr. O'Hayer's appointment in view of this changed circumstance. Although Dan River had previously objected

to the appointment on the grounds that one of its witnesses was personally known to and had worked with Mr. O'Hayer, Dan River now assented to the appointment, apparently in view of the fact that such witness would not be called to testify. In fact, it is conceded that the anticipated witness known to Mr. O'Hayer did not participate in the arbitration proceedings in any manner. Apparently at this time Cal-Togs voiced no objection to Mr. O'Hayer's appointment.

On August 12, 1977, GACTI sent each of the parties a list of six proposed hearing dates, requesting notification of unacceptable dates within ten days. Receiving no response, GACTI advised the parties by Notice of Hearing dated August 24, 1977 that a hearing would be held at the AAA on November 1, 1977, and that in the event of unforeseen circumstances making attendance impossible, requests for postponements were to be made "no less than 48 hours before the time and date set for the hearing." (Exhibit 20 to Kreindler Reply Affidavit). On October 25, 1977, Cal-Togs unsuccessfully sought an adjournment.

Meanwhile, by letter dated October 2, 1977, GACTI confirmed its telephonic advice of October 21 and 25 to the parties that Mr. Hellman had withdrawn as arbitrator as a result of other commitments and that Vincent DePetrillo, also engaged in piece and beck dyeing, had been appointed in his stead. Since the hearing was scheduled for November 1, objections to this appointment were requested immediately. Cal-Togs so objected on October 27, 1977, on the grounds that it was not given ten days to consider the appointment, that Dan River was also engaged in dyeing fabrics, and that Mr. DePetrillo's company was possibly engaged in a dispute with a company closely affiliated with Cal-Togs. An adjournment was requested to investigate this dispute as well as to resolve the issues to Mr. O'Hayer's relationship with Dan River's witness and as to whether an ethical conflict existed by Cal-Togs' California counsel's representing Dan River in unrelated matters. This request was reiterated by mailgram dated October 28, 1977. Dan River objected to the postponement and represented that the witness known to Mr. O'Hayer would not be present. By GACTI's letter dated November 1, 1977, the adjournment request was denied.

The hearing commenced as scheduled. Cal-Togs, however, was represented by New York counsel engaged merely to renew the request for an adjournment, asserting as grounds therefor the ethical complaint levelled at Cal-Togs' California counsel, the unavailability of Cal-Togs' principal witness due to business engagements concededly made no sooner than October 25, 1977, despite the August 1977 notice of hearing, and the necessity of pursuing questions relating to the composition of the panel. Dan River objected to their request; after due consideration, the arbitrators denied the postponement. Cal-Togs' counsel then objected to proceeding on the grounds of arbitrator partiality. This objection had previously been made to the Regional Director of the AAA and rejected; the arbitrators likewise rejected this contention and declined to recuse themselves. The hearing proceeded. Acting on instructions from California received telephonically during the luncheon recess, Cal-Togs' New York Counsel declined to examine any of the witnesses or present a case, although he remained and voiced objections to the evidence throughout. The arbitrators, however, independently examined the witnesses and then rendered an award in favor of Dan River.

After issuance of this award, Cal-Togs, by letter dated November 3, 1977 to AAA's Regional Director, sought to have the arbitration proceedings invalidated, alleging administrative irregularities and improper arbitrator conduct as the bases therefor. These complaints consisted of objections to the AAA's transfer of the proceedings to New York, partiality on the parts of Messrs. O'Hayer and DePetrillo, improper selection of Mr. DePetrillo, and improper denial of Cal-Togs' request for a continuance. These grounds, plus others, including objections to administering the proceedings under GACTI rather than AAA rules, are now urged in support of Cal-Togs' application to vacate the award.

Cal-Togs' initial contention that the dispute was not arbitrable since the parties failed to agree on the arbitration tribunal and locale is without merit. Although Cal-Togs' purchase order provides for arbitration in Los Angeles before the WCTIAC, Cal-Togs took it upon itself to institute arbitration proceedings before the AAA. It is also conceded that Cal-Togs expressly waived arbitration proceedings before the WCTIAC, consenting in its stead to arbitration before the AAA, by letter to the AAA dated January 21, 1976. (Exhibit 2 to Kriendler Reply Affidavit). Moreover, Cal-Togs' Demand for Arbitration before the AAA resulting from Dan River's purported breach of contract impliedly asserts the existence of a valid and binding arbitration contract; likewise, the action commenced by Cal-Togs in the California state court seeking to restrain the transfer to New York sought damages for breach of contract and alleged in the supporting affidavits on the preliminary injunction motion the fact that Cal-Togs had expressly consented to arbitration before AAA. (Exhibits K and L to David Affidavit). In view of this, Cal-Togs is estopped from contesting the existence of an arbitration agreement before this Court. *See Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537 (S.D.N.Y.1977).

Cal-Togs argues that whatever the scope of the agreement, it did not encompass consent by the parties to have a specific court confirm the award and enter judgment thereon and that, as a result, this Court lacks jurisdiction to confirm the award under 9 U.S.C. § 9.

9 U.S.C. § 9 provides in part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as pre-

scribed in Sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. . . .

It has been held that pursuant to this section, absent an agreement that judgment shall be entered on an arbitration award, subject matter jurisdiction is lacking. *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208 (2d Cir. 1973). It is true that while Cal-Togs' purchase order contains such a provision, Dan River's sales form does not. I need not enter into the quagmire presented by which agreement controls here, however, for Section 46(c) of the AAA's Commercial Arbitration Rules, as well as Section 38(c) of the GACTI's Arbitration Rules, provide that "Parties to these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any Federal or State Court having jurisdiction thereof." Since these rules are incorporated into the parties' agreement by operation of the rules, the requirements of 9 U.S.C. § 9 have been satisfied. *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272–73 (7th Cir. 1976); *see I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424 (2d Cir. 1974); *Varley v. Tarrytown Associates, Inc., supra; Reed & Martin, Inc. v. Westinghouse Electric Corp.*, 439 F.2d 1268 (2d Cir. 1971). Moreover, diversity of citizenship is present, 28 U.S.C. § 1332. *Reed & Martin, Inc. v. Westinghouse Electric Corp., supra.* Consequently, this Court has the power to confirm the award.

With regard to Cal-Togs' contention that the arbitration proceedings were improperly transferred from Los Angeles to New York, Section 10 of the AAA's Commercial Arbitration Rules, deemed part of the arbitration agreement by virtue of Section 1 thereof, provides:

The parties may mutually agree on the locale where the arbitration is to be held. If the locale is not designated within seven days from the date of filing the Demand of Submission the AAA shall have

power to determine the locale. Its decision shall be final and binding. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within seven days after notice of the request, the locale shall be the one requested.

■ Although Cal-Togs contends that Section 10 is triggered only when no locale is designated and thus it is inapplicable to the instant transfer since Cal-Togs had designated the locale as Los Angeles on its Demand for Arbitration, the language of that Section renders such contention meritless.[1] The parties obviously did not mutually agree on the locale; it was because of a disagreement that the AAA was asked to determine the issue. The last sentence of Section 10 indicates that if no objection is made to a request for a specific locale, then the hearing shall be held in that locale. Surely, it cannot be seriously argued that if an objection is made, Section 10 does not empower the AAA to determine the locale. Since Section 10 is clearly applicable and part of the agreement to arbitrate, and the AAA's decision thereunder is "final and binding," that decision will not be reviewed here.

The last argument relating to the arbitration agreement is Cal-Togs' objection to the arbitration proceeding before the GACTI, the textile division of AAA, rather than AAA. This particular objection was never made prior to the institution of this action, although Cal-Togs consistently raised numerous other objections throughout the pendency of the arbitration proceedings before that tribunal, at the hearing, and following the issuance of the award. Not only did Cal-Togs remain silent for over one and one-half years with respect to the issue of the authority of the GACTI to administer

the arbitration, but it fully participated in the arbitration proceeding before that body, partaking in the selection of the arbitration panel and setting of a hearing date, requesting postponements, corresponding with the GACTI in New York, and making known its position on all matters involved in the arbitration other than that relating to whether it agreed to arbitrate before the GACTI.

I note, moreover, that GACTI is the textile division of the AAA, and although operating under a separate set of arbitration rules, those rules do not significantly differ from the Commercial Arbitration Rules of the AAA. The AAA's New York Regional Director has attested that the GACTI Rules are administered by AAA personnel and that the GACTI and the AAA share a common pool of proposed arbitrators from which arbitrators for textile cases, such as here presented, are drawn. A comparison of GACTI and AAA rules indicates differences merely of a technical and non-substantive nature. Indeed, Cal-Togs does not assert that any differences between the AAA and GACTI rules affected any of its substantive rights. *Compare Lea Tai Textile Co., Ltd. v. Manning Fabrics, Inc.*, 411 F.Supp. 1404 (S.D.N.Y.1975).

■ In view of the above, Cal-Togs' present position with regard to the AAA's transfer of the arbitration to GACTI is unpersuasive.

Cal-Togs' remaining contentions in opposition to confirming and in support of vacating the award are aimed at the conduct of the arbitrators. 9 U.S.C. § 10(a)–(d).

9 U.S.C. § 10(c) allows vacatur of an award:

---

1. Cal-Togs also contends that the AAA was without jurisdiction to fix the locale. In support of this proposition, Cal-Togs relies on a "Blind P.S." to its former counsel purportedly added to the AAA's February 19, 1976 notification to the parties of its locale determination. This "Blind P.S." to Cal-Togs' counsel "for your information only" purports to detail the basis of the AAA's determination (Exhibit J to Freedman Affidavit in Opposition to Confirma-

tion). This ex parte explanation, however, is not part of the actual determination and was obviously not communicated to Dan River. The New York Regional Director of the AAA has attested that the locale determination was made pursuant to Section 10 of the AAA's Commercial Arbitration Rules.

In view of the above, I am according no weight to the "Blind P.S."

[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

Cal-Togs initially argues that notwithstanding good cause for an adjournment, the arbitrators unreasonably refused to postpone the hearing. This "good cause" purportedly included Cal-Togs' assertion that it needed time to investigate issues relating to the composition of the panel and to clear up the ethical charges levelled at its California counsel, that its principal witness and head salesman was unavailable because of sales appointments in California, that no prior request for a postponement had been made, and that its New York counsel who appeared at the hearing was empowered merely to request an adjournment and had no knowledge of the facts and circumstances underlying the dispute. It is further argued that the refusal to grant a continuance constituted a refusal to hear Cal-Togs' evidence, warranting vacating the award. Under the circumstances here presented, these contentions are without merit.

■ The November 1, 1977 hearing was scheduled in August 1977. Notwithstanding this, Cal-Togs' "Chief witness" made sales commitments just one week prior to the scheduled hearing. No explanation was offered as to why other of Cal-Togs' witnesses could not attend nor why the "chief witness" could not arrange his schedule so as to allow his attendance. Cal-Togs claims that the presence of this witness in California to "show the line" precluded him from preparing for the hearing; yet the hearing had been scheduled for months prior to the time that his purported commitments in California were made. Refusal to adjourn on this ground cannot be viewed as unreasonable.

■ With respect to the ethical complaint levelled at Cal-Togs' California counsel Mr. Freedman, it is conceded that Dan River brought this problem to the attention of Freedman as early as February 1977, although the facts of that conversation are in dispute. In early October 1977, Dan River once again raised the issue in connection with Freedman's appearance on behalf of another of Dan River's adversaries in a lawsuit in California. It was Freedman's position with respect to this second suit that he had requested and received an ethical opinion from the State Bar of California indicating that due to the nature of his representation of Dan River, he was not foreclosed from representing this adversary. Freedman attests, as well, that he contacted the State Bar on the issue of Cal-Togs' representation following the February 1977 conversation in which the alleged conflict was first raised. Since Cal-Togs thus had at least nine months prior to the hearing to resolve that issue, denying its request for an adjournment to resolve it can hardly be viewed as unjustified.

■ Cal-Togs' objection to the composition of the panel proffered in support of an adjournment appears to be focused on the appointment of Mr. DePetrillo. Cal-Togs argues that since Mr. DePetrillo was engaged in the business of dyeing, he was not a "neutral" third arbitrator since Dan River was also so engaged. Dan River disputes that its business encompasses dyeing; yet I need not resolve this factual matter since Mr. Hellman, the arbitrator whom Mr. DePetrillo replaced, was likewise a dyer, yet Cal-Togs did not object to his appointment. Cal-Togs argues that GACTI did not allow the parties ten days within which to object to Mr. DePetrillo's appointment as indicated by Section 11 of its Rules; yet Cal-Togs did object immediately and the grounds of its objection were considered and rejected by GACTI, including the challenge based on a possible relationship, presently conceded as non-existent, between Mr. DePetrillo's company and a Cal-Togs affiliate company. In this regard, I note that Section 18 of the AAA's Rules and Section 13 of the GACTI's Rules provide that the AAA's or Secretary's determination, respectively, whether to disqualify an arbitrator on the basis of relationships, such as that previously alleged, "shall be conclu-

sive." Thus, refusal to adjourn to investigate Mr. DePetrillo's alleged ties after the GACTI had made a decision not to disqualify him was well within the bounds of the arbitrator's discretion.

Cal-Togs' reliance on *Tube & Steel Corp. of America v. Chicago Steel Products,* 319 F.Supp. 1302 (S.D.N.Y.1970) and *Allendale Nursing Home, Inc. v. Local 1115 Joint Board,* 377 F.Supp. 1208 (S.D.N.Y.1974) to support vacation of the award as a result of the refusal to adjourn is misplaced. In *Tube & Steel,* the respondent agreed to be available on the originally proposed hearing date as well as the scheduled date. When, one month prior to the scheduled date, respondent was advised that the hearing would be held a week earlier, it promptly objected, having previously indicated the unacceptability of that new date. Cal-Togs cannot seriously fit the facts of its situation into those encompassed by *Tube & Steel.* Nor does it fall within *Allendale* in which the arbitrator failed to adjourn although he was clearly aware that the plaintiff's most crucial witness became seriously ill at the hearing and left to go to the hospital.

■ The fact that Cal-Togs' New York counsel was not apprised of the facts and circumstances of the dispute so as to adequately present Cal-Togs' case at the hearing is not cause to vacate the award, for it is attributable to Cal-Togs alone. Knowing that its telephonic and written requests for an adjournment had been denied prior to the hearing, Cal-Togs cannot complain that proceeding with the hearing, although its New York counsel had been empowered merely to request an adjournment, was error on the part of the arbitrators. Cal-Togs had a responsibility and opportunity to appear to contest Dan River's case; instead it chose not to do so. Cal-Togs' conduct represented an attempt to force an adjournment knowing that a postponement had been considered and denied. It was given the opportunity to appear, and notwithstanding that its New York counsel contacted it for instructions on how to proceed, it chose in fact to default. Cal-Togs' attempts at transforming this default into

arbitrator error in denying the adjournment, and its argument that the same constituted arbitrator refusal to hear its evidence, can simply not be countenanced.

■ Cal-Togs' next set of objections focus on arbitrator prejudice and partiality, 9 U.S.C. §§ 10(b) and (c). These are based on the refusal to grant an adjournment, the appointment of Mr. DePetrillo in purported violation of GACTI rules, the holding of a hearing in the absence of adequate representation of Cal-Togs and the award in Dan River's favor. Since I have already considered and rejected most of these contentions, I need not reiterate at this point. However, I do note that Cal-Togs has failed to allege any disqualifying relationships with regard to any of the arbitrators, and indeed has never asserted an objection to the appointment of Mr. Stone, the arbitrator from Cal-Togs' field. In this regard, it appears from the scanty Record of Hearing (Exhibit W to Freedman Affidavit in Opposition to Confirmation) that the decision of all three arbitrators was unanimous; Cal-Togs does not argue to the contrary. Additionally, it concedes that following the presentation of Dan River's case, after Cal-Togs' New York counsel unsuccessfully sought another adjournment and followed Cal-Togs' telephonic directions not to cross-examine the witnesses, the arbitrators independently questioned the witnesses before reaching their apparently unanimous conclusion in favor of Dan River. The burden of proof with respect to a claim of partiality rests with Cal-Togs, *Saxis Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577 (2d Cir. 1967), who has simply failed to meet it.

Lastly, Cal-Togs contends that the award was procured by undue means, 9 U.S.C. § 10(a), and that the AAA administrator exceeded his powers in transferring the matter to the GACTI in New York. 9 U.S.C. § 10(d). I have already disposed of this latter contention, and as to the former, it appears that Cal-Togs again urges the failure to adjourn the proceedings in support thereof, and again, this contention is rejected.

Cal-Togs further asserts, however, that the arbitrators rendered the award on the basis of Dan River's counsel's unsworn testimony and that the award was based on a purported contract which was never submitted to arbitration, having been excluded from Dan River's formal arbitration claim. Cal-Togs concedes, however, that at the outset of the hearing, Dan River's witnesses were sworn, although it objects to the manner in which it occurred, and that they substantiated the opening statements of Dan River's counsel. It further concedes that the witnesses were independently examined by the arbitrators, although it characterizes this examination as "perfunctory question[ing] for about fifteen minutes." (David Affidavit in Opposition to Confirmation ¶ 39). Moreover, the Record of the Hearing shows that the evidence consisted both of the sworn testimony of seven witnesses and some thirteen separate exhibits. The "contract" about which there was no dispute was apparently received into evidence; however, Cal-Togs concedes that counsel for Dan River stated to the arbitrators that no dispute respecting the goods reflected therein was extant. There is no indication that the arbitrators relied on this particular document, concededly not in dispute, in rendering their award.

Cal-Togs correctly recognizes that, in the absence of undue means or exceeding of authority it must show that the conduct of the arbitrators revealed "manifest infidelity to what the arbitrators know to be the law, but deliberately disregard . ." *San Martine Compania de Navegacion S.A. v. Saguenay Terminals, Ltd.*, 293 F.2d 796 (9th Cir. 1961); *see Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir. 1972). There has been no such showing here, even on the most liberal reading of Cal-Togs' submissions. What is unfortunately here presented is a party's simple dissatisfaction with the operation of arbitration machinery set into motion by itself, resulting in an award eroded by attorneys' fees in the process of collection.

Dan River's petition to confirm the award is granted in all respects; Cal-Togs' cross-motion to vacate is denied.

. SETTLE JUDGMENT ON NOTICE.