In the Matter of the Application of LOCAL 140, INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO, Petitioner,

v.

P.C.R. SPORTSWEAR CORP., Respondent.

79 Civ. 5313 (HFW).

United States District Court, S. D. New York.

April 15, 1980.

Max Zimny, by Larry Magarik, New York City, for petitioner.

Paul S. Shoock, Nyack, N. Y., for respondent.

## OPINION

WERKER, District Judge.

This petition is brought pursuant to 9 U.S.C. § 9 to confirm an arbitration award granted in favor of petitioner Local 140, International Ladies' Garment Workers' Union, AFL–CIO (the "Union"), against respondent P.C.R. Sportswear Corp. ("P.C. R."). Respondent opposes the petition on the grounds of (a) lack of jurisdiction; (b) impossibility of performance of the collective bargaining agreement; (c) partiality of the arbitrator; and (d) misconduct of the arbitrator in refusing to admit material evidence.[1]

The controversy arises out of P.C.R.'s failure to comply with the terms of a collec-tive bargaining agreement entered into with the union, effective June 5, 1978 to May 31, 1979, which incorporated the terms of an agreement between Local 23–25, I.L. G.W.U. and the Greater Blouse, Skirt and Undergarment Association, Inc. (the "association agreement"). The association agreement provided that P.C.R. would remain liable for the duration of the term of the agreement for employees' wages, holiday pay and contributions to employee benefit funds unless and until P.C.R. sold its shop and the purchaser expressly assumed the performance of the agreement.[2]

P.C.R. sold its shop on March 15, 1979 to another garment manufacturer which continued to employ most of the same workers who had been employed by P.C.R. without agreeing to be bound by the collective bargaining agreement between the union and P.C.R. Therefore, pursuant to that agreement, the union demanded continued performance by P.C.R. until May 31, 1979. P.C.R. refused.

The dispute was submitted to arbitration before Marshall L. Rosenberg on April 5, 1979, and hearings were held on May 14 and June 27, 1979. During the course of the hearings the union elicited testimony from various witnesses and offered numerous exhibits to support its monetary claim. In contrast, P.C.R.'s attorney offered no evidence other than his own testimony, arguing that the sale of P.C.R.'s shop did not come within the purview of the collective bargaining agreement since the conveyance was merely a real estate transaction which

---

1. The only relevant grounds upon which 9 U.S.C. § 10 permits the court to vacate an arbitration award are:

    (b) Where there was evident partiality or corruption in the arbitration or either of them.

    (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

    (d) Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

2. Article Sixth of the association agreement provides as follows:

    All of the terms and provisions of this agreement shall be binding upon each Employer and upon his successors and assigns. In the event the Employer sells or transfers his business or his shop or shops to another, he shall nevertheless continue to be liable for the complete performance of the terms and provisions of this agreement by the purchaser or transferee until the purchaser or transferee expressly, in writing, assumes such performance and agrees to be fully bound by the terms and provisions of this agreement.

included the purchase of machinery and therefore not a sale of its "business." P.C.R. further asserted that it was unaware the purchasers intended to continue to operate the shop as a garment factory.

Unpersuaded by P.C.R.'s arguments, the arbitrator found it liable for the performance of the collective bargaining agreement. In order to determine the extent of P.C.R.'s liability, the arbitrator called upon the union to submit a computation of its claim and granted P.C.R.'s request to offer rebuttal evidence by August 1, 1979. No such evidence was received. Instead, P.C.R. requested further time to cross-examine its former employees and to examine the current employer's payroll records. The arbitrator rendered his award on August 3, 1979, finding P.C.R. liable for unpaid wages, holiday pay and benefit fund contributions in the amount of $7,711.84.

■ Respondent's initial claim in opposition to confirmation of the arbitrator's award is based on Mr. Rosenberg's alleged lack of jurisdiction to hear the controversy. The agreement between the parties designated George Marlin as the impartial chairman to serve as arbitrator of any disputes arising thereunder. The agreement further provided that in the event that Mr. Marlin was unable to serve, the parties were jointly to select an arbitrator to act in his stead.[3] P.C.R. claims that the union unilaterally appointed Mr. Rosenberg as arbitrator when Mr. Marlin resigned. This bald assertion is belied by an agreement of October 10, 1978 which modified the association agreement and provided that Mr. Rosenberg would have "the exclusive power and jurisdiction" to decide whether he or Mr. Marlin had jurisdiction over a specific dispute. Affid. of Larry Magarik, sworn to

Oct. 8, 1979, exh. C. By Mr. Rosenberg's proceeding with the hearings and rendering an award, he tacitly exercised jurisdiction over the dispute.

■ Similarly, I find P.C.R.'s second challenge to the confirmation of the award based on the contract defenses of impossibility of performance and frustration to be untenable. Respondent claims that the conveyance of its shop to Louis and Rhoda Temco was not a "sale." The language of the contract between the parties is clear, however, and since the arbitrator found that P.C.R.'s sale of the shop comes within the ambit of the agreement, I will not substitute a different interpretation for that of the arbitrator. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960); *Advance Publications, Inc. v. Newspaper Guild of New York*, 616 F.2d 614, 617 (2d Cir. 1980).

■ Respondent's claim of partiality is predicated on an alleged admission by the arbitrator that he "participated in the formulation of contract language for the agreement" and alleged past association with the union. Respondent's Memo. in Opp. at 5; answer ¶ 6. Both of these assertions are baseless.

Mr. Rosenberg did not state that he had been involved in negotiations for the agreement at issue before him. Rather, at the first hearing, he acknowledged participation in negotiations with other employers which resulted in contracts containing language much like that in the subject agreement. In addressing a challenge predicated on arbitral bias, the second circuit has accorded "little weight" to evidence that an

---

**3.** The collective bargaining agreement between the parties incorporated the arbitration machinery provided by the association agreement. Article Forty-third, §§ 12(b) and (c) of the association agreement state:

(b) Should the Impartial Chairman resign, refuse to act or be incapable of acting, or should the office become vacant for any reason, the parties shall within five (5) days thereafter jointly designate another person as Impartial Chairman. If they fail to agree, the

Mayor of the City of New York shall, upon application by either party, summarily appoint the Impartial Chairman. A successor Impartial Chairman shall have all the rights and powers of the Impartial Chairman.

(c) Each Employer, each worker represented by Joint Board and Local 23–25 or by Local 23–25, assents to the appointment of the Impartial Chairman and his successor and to the selection of a deputy under this agreement.

arbitrator has litigated contract clauses identical or similar to those involved in the dispute before him. *Reed & Martin Inc. v. Westinghouse Electric Corp.*, 439 F.2d 1268, 1275 (2d Cir. 1971).

Mr. Rosenberg's prior association was with Local 23–25, not with Local 140, the petitioner herein, as alleged by P.C.R. Affid. of Joseph F. Gulluscio, sworn to Nov. 13, 1979, ¶ 4. Furthermore, any claim of prior association will not be entertained by this court. P.C.R. agreed to submit any dispute to arbitration according to the rules set forth in the association agreement which included the selection of an arbitrator.

■ P.C.R.'s next argument is based on the statutory provision which allows vacatur of an arbitration award "[w]here the arbitrator [was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy. . . ." 9 U.S.C. § 10(c). At the arbitration hearing in issue, the union offered evidence through witnesses' testimony and documentary exhibits prepared by these witnesses regarding the amount of P.C.R.'s liability for wages, holiday pay and employee benefit fund contributions. The manager of the union testified that prior to the hearing he had requested the respondent to produce payroll records to facilitate the calculation of P.C.R.'s liability. P.C.R. failed to comply. The attorney for P.C.R. testified as its sole witness and engaged in cross-examination of the union witnesses. He offered no further evidence. At the conclusion of the hearing on June 27, 1979, the arbitrator proposed that the union submit an exhibit summarizing its claim against P.C.R. Mr. Rosenberg also offered P.C.R. the opportunity to present rebuttal evidence within two weeks. At the end of the two-week period and at P.C.R.'s request, the arbitrator set August 1, 1979 as the final date for submission of rebuttal evidence. Respondent failed to provide further evidence by that date. It now seeks to oppose confirmation of the award made in the union's favor by alleging misconduct by the arbitrator in denying the introduction of material evidence.

Under these facts it was not an abuse of discretion for the arbitrator to fail to comply with respondent's request on August 1 for an opportunity to cross-examine former employees and to examine the current employer's records. Respondent's opposition to confirmation is merely an attempt to transform its own inaction into a claim of misconduct by the arbitrator. The court will not countenance such a claim. *Dan River, Inc. v. Cal-Togs, Inc.*, 451 F.Supp. 497, 503–04 (S.D.N.Y.1978).

Accordingly, the petition to confirm the arbitration award is granted. Settle judgment within 10 days after entry of this decision.

SO ORDERED.