948 F.2d 117
 Fed. Sec. L. Rep. P 96,290
In the Matter of New York Stock Exchange Arbitration between
Marco BARBIER; Silvana Barbier and Stefania
Barbier, Petitioners-Appellees,
v.
SHEARSON LEHMAN HUTTON INC., Successor-in-interest to
Shearson Lehman Brothers, Inc.; and Roger E.
Bendelac, Respondents,
Roger E. Bendelac, Respondent-Appellant.
 No. 1420, Docket 91-7070.
 United States Court of Appeals,
Second Circuit.
 Argued May 10, 1991.
Decided Oct. 31, 1991.
 
 Roger E. Bendelac, New York City, respondent-appellant, pro se.
 Daniel J. Kornstein, New York City (Wayne O. Alpern, Kornstein Veisz & Wexler, New York City, of counsel), for petitioners-appellees.
 William J. Fitzpatrick, New York City (Gerard J. Quinn, New York City, of counsel), submitted a brief for amicus curiae the Sec. Industry Ass'n, Inc.
 Stuart C. Goldberg, Danbury, Conn. (Seth E. Lipner, Danbury, Conn., of counsel), submitted a brief for amicus curiae the Public Investors Arbitration Bar Ass'n.
 Before PRATT, MINER and ALTIMARI, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Respondent-appellant Roger Bendelac appeals from a judgment entered in the United States District Court for the Southern District of New York (Ward, J.) confirming a New York Stock Exchange arbitration award of compensatory and punitive damages in the total amount of $155,645.00 in favor of petitioners-appellees Marco Barbier, Silvana Barbier and Stefania Barbier (collectively, the "Barbiers"). In their complaint, the Barbiers alleged claims of conversion, breach of fiduciary duty, breach of contract, negligence and/or recklessness and assault against Bendelac and his former employer, Shearson Lehman Hutton, Inc. ("Shearson").
 
 
 2
 On appeal, Bendelac contends that the district court erred by denying his motion to vacate the arbitral award in its entirety. As grounds for vacatur, Bendelac maintains that the arbitration award is based partly on issues that were withdrawn from arbitral consideration and that the arbitration panel (the "Panel") failed to consider all the issues presented to it. He also argues that the court incorrectly applied the Federal Arbitration Act ("FAA"), see 9 U.S.C. §§ 1-16 (1988), rather than New York's arbitration statute, see N.Y.Civ.Prac.L. & R. §§ 7501-7511 (McKinney 1980 & Supp. 1991). Bendelac asserts that the FAA does not apply in this case because jurisdiction was predicated on the diversity of the parties and, on that basis, the Erie doctrine requires the court to apply New York's arbitration statute. He further argues that, under the Erie doctrine, the court was required to apply settled New York law, which prohibits arbitrators from awarding punitive damages, see Garrity v. Lyle Stuart, Inc., 40 N.Y.2d 354, 353 N.E.2d 793, 386 N.Y.S.2d 831 (1976), and therefore it was error to confirm the Panel's award of punitive damages. For the reasons that follow, we affirm the portion of the judgment confirming the compensatory damages award. We reverse the portion of the judgment confirming the arbitral award of punitive damages, although for reasons other than those asserted by Bendelac.
 
 BACKGROUND
 
 3
 On January 7, 1986, the Barbiers entered into a written agreement ("Agreement") with Shearson and opened an investment account for the purchase and sale of securities. Shearson assigned Bendelac as the broker to service the Barbiers' investment account. Paragraph 13 of the Agreement contained an arbitration clause, which provided in pertinent part:
 
 
 4
 This agreement shall ... be governed by the laws of the State of New York. Unless unenforceable due to federal or state law, any controversy arising out of or relating to [the Barbiers'] accounts, to transactions with [Shearson, its] officers, directors, agents and/or employees for [the Barbiers] or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. as [the Barbiers] may elect.... Judgement upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.
 
 
 5
 On October 19, 1988, after learning that the funds in their investment account had been nearly depleted, the Barbiers filed a Statement of Claim with the Arbitration Tribunal of the New York Stock Exchange, Inc. ("NYSE"), alleging that Bendelac and Shearson engaged in commodities trading for their account without their knowledge or authorization, resulting in the loss of their investment.
 
 
 6
 The Barbiers asserted claims of conversion, breach of fiduciary duty, breach of contract, negligence and/or recklessness, and assault. The assault claim, which was predicated on an alleged threat by Shearson to have Marco Barbier forcibly removed from its offices when he showed up to discuss the unauthorized trading claims, was withdrawn during the course of the arbitration proceedings. The Barbiers contended that because their account was non-discretionary, Shearson could trade for the account only after obtaining the Barbiers' express authorization. They asserted that Bendelac and Shearson had forged several documents conferring on Shearson discretionary authority to trade in commodities and commodities options. In their Statement of Claim, the Barbiers demanded an arbitral award for compensatory, consequential and punitive damages. Bendelac and Shearson denied the allegations and maintained that no Shearson employee had forged the Barbiers' signature on any documents.
 
 
 7
 After several days of hearings, the Panel filed its unanimous award in favor of the Barbiers on May 18, 1990. The arbitrators awarded the total sum of $155,645.00, of which $25,000 represented punitive damages. Of the total sum, the Panel apportioned $31,129.00 to Shearson and $124,516.00 to Bendelac.
 
 
 8
 On June 12, 1990, pursuant to paragraph 13 of the Agreement, the Barbiers filed a petition to confirm the arbitral award in the district court. Bendelac filed a motion to vacate the award in its entirety, arguing that the Panel exceeded its powers or imperfectly executed its powers by failing to render an award on all of the submitted issues, by basing its award on a claim that had been withdrawn, and by awarding punitive damages. Shearson challenged only that portion of the award granting punitive damages.
 
 
 9
 On December 3, 1990, the district court granted the Barbiers' petition to confirm the arbitral award and denied the motions of Bendelac and Shearson to vacate the award. Barbier v. Shearson Lehman Hutton, Inc., 752 F.Supp. 151, 164 (S.D.N.Y.1990). Initially, the district court found as wholly without merit Bendelac's contention that, since federal court jurisdiction was predicated on diversity of citizenship, the New York arbitration statute applies rather than the FAA. 752 F.Supp. at 154.
 
 
 10
 Next, citing Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Jr. Univ., 489 U.S. 468, 477, 109 S.Ct. 1248, 1254-55, 103 L.Ed.2d 488 (1989), the district court recognized that the FAA does not preempt the application of all state laws, especially where the parties have provided in their agreement for the application of state law. 752 F.Supp. at 155. The court, however, rejected the contention that it was required to apply Garrity on account of the choice-of-law clause in the Agreement.
 
 
 11
 Construing the arbitration clause, the court concluded that the parties did not intend for their arbitration proceeding to be governed by Garrity. First the court found that the choice-of-law provision was ambiguous because it was susceptible to two interpretations: On the one hand, it might be read to require only the application of New York substantive law and on the other hand it might be construed to require the application of New York arbitration law as well as New York substantive law. 752 F.Supp. at 156. Given the perceived ambiguity in the choice-of-law clause, the court considered extrinsic evidence of the parties' intent. "[T]he [c]ourt [then concluded] that the parties did not intend, through the inclusion of a choice-of-law clause in the Agreement, that New York arbitration law be applied to disputes under the Agreement." 752 F.Supp. at 157. To arrive at that conclusion, the court characterized Garrity as arbitration law. Finally, finding that the arbitrators were authorized to award punitive damages under paragraph 13 of the Agreement, which provides that "any controversy arising out of or relating to [the] accounts ... shall be settled by arbitration," the district court confirmed the arbitral award. 752 F.Supp. at 159-61, 164. Only Bendelac filed a notice of appeal.
 
 DISCUSSION
 I. Compensatory Award
 
 12
 Bendelac contends that the FAA does not apply in this case. He acknowledges that there is a basis of federal jurisdiction, namely diversity of citizenship, but maintains that the Erie doctrine mandates that the New York arbitration statute be invoked when federal jurisdiction is predicated on diversity. This is a strange contention because diversity jurisdiction serves as a basis for invoking the provisions of the FAA, not as a ground for invoking the application of a state arbitration statute. See Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 703 (2d Cir.1985), cert. denied, 475 U.S. 1067, 106 S.Ct. 1381, 89 L.Ed.2d 607 (1986); Ballantine Books, Inc. v. Capital Distributing Co., 302 F.2d 17, 19 (2d Cir.1962); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 408-09 (2d Cir.1959). The FAA applies when there is federal subject matter jurisdiction, i.e., diversity jurisdiction, see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983), and when the contract calling for arbitration "evidenc[es] a transaction involving interstate commerce." 9 U.S.C. § 2. That the first requirement is met here is not called into question. Nor could Bendelac dispute the interstate nature of the transactions at issue: "[They] involved Venezuelan investors, a New York financial institution and the purchase and sale of securities on a national exchange." 752 F.Supp. at 155; see also Willis v. Shearson/American Express, Inc., 569 F.Supp. 821, 823 (M.D.N.C.1983); Corey v. New York Stock Exchange, 493 F.Supp. 51, 54 (W.D.Mich.1980), aff'd, 691 F.2d 1205 (6th Cir.1982). Therefore, the Barbiers properly invoked the provisions of the FAA to confirm the arbitral award.
 
 
 13
 Bendelac asserts that the arbitral award should be vacated in its entirety by reason of the Panel's supposed failure to render an award on all of the issues presented to it. He also accuses the Panel of basing its award on the assault claim, which was withdrawn by the Barbiers during the hearings. We assume that these contentions are based on the enumeration of claims appearing in the upper portion of the arbitral award form entitled "Case Summary." In the "Case Summary," the Panel listed three claims: "unauthorized trades, conversion, [and] assault." While conversion and assault were set forth as specific claims in the Barbiers' Statement of Claim, unauthorized trading was not listed as a claim.
 
 
 14
 It is well-settled that judicial review of an arbitration award is narrowly limited. The award may be vacated only if at least one of the grounds specified in 9 U.S.C. § 10 is found to exist. Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 264-65 (2d Cir.1989); Diapulse Corp. v. Carba, Ltd., 626 F.2d 1108, 1110 (2d Cir.1980). As the district court correctly noted, "[a]rbitrators need not explain their rationale for an award." 752 F.Supp. at 163; see also Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir.1985). Moreover, courts generally "will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators." Kurt Orban Co. v. Angeles Metal Sys., 573 F.2d 739, 740 (2d Cir.1978). Rather, "if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir.1972).
 
 
 15
 The district court found, after a complete review of the parties' submissions, that the Panel "considered all of the claims prior to rendering [its] award." 752 F.Supp. at 163. On the basis of the record, we hold that this finding is not clearly erroneous. See A/S Siljestad v. Hideca Trading, Inc., 678 F.2d 391, 392 (2d Cir.1982) (per curiam); Ballantine Books, 302 F.2d at 21-22. As the district court noted, "[e]vidence adduced during the course of the arbitration proceedings demonstrated that [the Barbiers'] names were forged on various account documents, thus facilitating the unauthorized dissipation and conversion of [the Barbiers'] funds without their knowledge." 752 F.Supp. at 163 n. 20. We think it is quite clear that the claims of breach of contract, breach of fiduciary duty and negligence and recklessness are encompassed by the terms, "unauthorized trading." The common denominator of those claims is unauthorized trading, and arbitrators properly may describe the claims in one all-encompassing term in place of a listing of all claims. With respect to the claim of assault, the fact that it appeared in the "Case Summary" is not an indication that the Panel based its award on that claim. Bendelac presents no persuasive evidence that the Panel acted on the claim of assault, and it was clear to the parties that this claim was withdrawn early in the proceedings.
 
 
 16
 Nor is the arbitral award ambiguous or indefinite, as Bendelac asserts. The award specifically provides that it is rendered "in full and final settlement of all claims between the parties." Moreover, the award was "clear enough to indicate what each party [was] required to do," Dighello v. Busconi, 673 F.Supp. 85, 90 (D.Conn.1987), aff'd mem., 849 F.2d 1467 (2d Cir.1988), and "no further litigation is necessary to finalize the obligations of the parties under the award," id.
 
 II. Punitive Damages Award
 
 17
 Bendelac contends that the district court erred in confirming the arbitral award of punitive damages because under New York law arbitrators are prohibited from awarding punitive damages. As mentioned previously, Bendelac asks us to apply Garrity because the Erie doctrine requires its application. Amicus curiae, the Securities Industry Association, Inc. ("SIA"), urges us to apply Garrity on the ground that the parties' arbitration agreement contains a choice-of-law provision directing that disputes arising under the contract be governed by New York law. Since New York law is incorporated in the Agreement through the choice-of-law provision, the SIA asserts that the Panel exceeded its powers when it awarded punitive damages in contravention of Garrity.
 
 
 18
 By contrast, the Barbiers contend that the application of the Garrity rule conflicts with federal law and thus is preempted by the FAA. This argument, however, is foreclosed by our recent decision in Fahnestock & Co. v. Waltman, 935 F.2d 512 (2d Cir.1991).
 
 
 19
 In Fahnestock, the parties' arbitration agreement was silent with respect to the arbitrators' authority to award punitive damages. We noted that "state law relating to the propriety of a punitive damages award by arbitrators in the absence of an agreement on the subject is not preempted by any federal substantive law bearing on the subject." Id. at 518. Because jurisdiction was predicated on diversity of citizenship and the agreement was silent regarding the issue of punitive damages, we held that " 'the propriety of an award of punitive damages for the conduct in question ... [is a] question[ ] of state law.' " Id. (quoting Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 278, 109 S.Ct. 2909, 2922, 106 L.Ed.2d 219 (1989)). We concluded that the district court properly vacated the punitive damages portion of the arbitral award.
 
 
 20
 We need not look to the Fahnestock rationale to determine whether Garrity should be applied here, because the language of the parties' Agreement is clear: "This agreement shall ... be governed by the laws of the State of New York." The FAA requires that private agreements to arbitrate be enforced in accordance with their terms. Volt Information Sciences, 489 U.S. at 478-79, 109 S.Ct. at 1255-56. As we noted in Fahnestock, the " 'parties are generally free to structure their arbitration agreements as they see fit.' " Fahnestock, 935 F.2d at 518 (quoting Volt Information Sciences, 489 U.S. at 478-79, 109 S.Ct. at 1255-56). Here, the parties elected to abide by "the laws of the State of New York" in the event of a dispute under the Agreement.
 
 
 21
 With respect to the Barbiers' contention that Garrity conflicts with federal substantive law, under which arbitrators are permitted to award punitive damages, see Kerr-McGee Refining Corp. v. M/T Triumph, 924 F.2d 467, 470 (2d Cir.1991), we likewise refer to our observation in Fahnestock that "[t]he body of preemptive federal substantive law that supports the FAA ... developed largely in response to state laws that restrict arbitration in derogation of agreements freely negotiated." Fahnestock, 935 F.2d at 518. The application of Garrity here is not in derogation of the parties' agreement but rather in accordance with that agreement. "Where ... the parties have agreed to abide by [New York law], enforcing [that law] according to the terms of the agreement is fully consistent with the goals of the FAA," even if the result is that punitive damages are prohibited where in the absence of the choice-of-law provision, they would be permitted. Volt Information Sciences, 489 U.S. at 479, 109 S.Ct. at 1255. It is apparent from the inclusion of the choice-of-law provision that the parties intended to be bound by Garrity, and "as with any other contract, the parties' intentions control." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985).
 
 
 22
 The Barbiers contend that the choice-of-law clause incorporates only state substantive law, and not state arbitration law. Like the district court, they characterize Garrity as arbitration law rather than substantive law. We already have held that the measure of damages is a matter of state substantive law, see Fahnestock, 935 F.2d at 518, and "[t]hat the [Garrity ] rule is grounded in state policy concerns renders it no less a rule of substantive law." Id.; cf. Hunt v. Bankers & Shippers Ins. Co., 73 A.D.2d 797, 798, 423 N.Y.S.2d 718, 720-21 (4th Dep't 1979), aff'd, 50 N.Y.2d 938, 409 N.E.2d 928, 431 N.Y.S.2d 454 (1980).
 
 
 23
 Section 10(a)(4) of the FAA provides that an arbitral award may be vacated "[w]here the arbitrators exceeded their powers." Although this basis for vacatur is narrow, see Carte Blanche, 888 F.2d at 264, there is no clearer example of a case falling neatly within that provision than the case at bar. Since the arbitrators were not entitled to award punitive damages due to the choice-of-law provision in the parties' Agreement, it is manifest that the Panel exceeded its authority in awarding punitive damages. That portion of the award should have been vacated by the district court pursuant to 9 U.S.C. § 10(a)(4). See Sverdrup/Aro, Inc. v. International Assoc. of Machinists, 532 F.Supp. 143, 146-47 (E.D.Tenn.1980) (court must vacate award where remedy chosen is "expressly or implicitly prohibited by the terms of the ... agreement"); see also John T. Brady & Co. v. Form-Eze Sys., Inc., 623 F.2d 261, 264 (2d Cir.) (" 'where the damages are genuinely intended to be punitive ... the courts [should] vacate the award.' " (citation omitted)), cert. denied, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980).CONCLUSION
 
 
 24
 We affirm so much of the judgment against Bendelac as confirms the award of compensatory damages and reverse that part that confirms the award of punitive damages. We remand to the district court with a direction to enter a modified judgment against Bendelac in the principal amount of $104,516 with appropriate interest. No costs shall be allowed on appeal. The stay of proceedings in this Court is vacated, the Bankruptcy Court having issued an Order vacating the automatic stay arising from the Chapter 7 bankruptcy petition filed by Bendelac to the extent of allowing the release of this decision. See Matter of Barbier v. Shearson Lehman Hutton Inc., 943 F.2d 249 (2d Cir.1991).