THOMSON MCKINNON SECURITIES, INC. *vs*. ROBERT
CUCCHIELLA & another.[1]

No. 91-P-170.

Suffolk. March 11, 1992. - June 22, 1992.

Present: WARNER, C.J., DREBEN, & GREENBERG, JJ.

*Arbitration*, Damages, Securities account. *Federal Preemption*. *Contract*,
Choice-of-law clause.

Discussion of Federal cases involving claims that the provisions of the Fed-
eral Arbitration Act preempt State law with respect to the conduct of
arbitration. [700-704]
The choice-of-law provision of an arbitration agreement, which designated
New York law and the rules of the New York Stock Exchange as gov-
erning, was not preempted by the Federal Arbitration Act with respect
to the prohibition of New York law against arbitral punitive damage
awards, with the result that the arbitrator under that agreement was
without authority to make an award of punitive damages. [704]
There was no merit to the claim by a defendant in arbitration that there
was a conflict of interest of one of the arbitrators, and other claims of
procedural irregularities were effectively waived by the defendant.
[704-705]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 13, 1990.

The case was heard by *J. Owen Todd*, J.

*Neal M. Brown* for the defendants.

*David Hirschberg*, for the plaintiff, submitted a brief.

DREBEN, J. The primary question to be decided is whether
the Federal Arbitration Act (FAA) preempts State law so as
to permit an arbitral award of punitive damages under an
agreement purporting to be governed by New York law and
providing that disputes are to be resolved by arbitration
under the rules of the New York Stock Exchange (NYSE).

[1]Claire Cucchitti.

New York law precludes arbitration awards of punitive damages. *Garrity* v. *Lyle Stuart, Inc.*, 40 N.Y.2d 354, 356-357 (1976).

The underlying dispute between Thomson McKinnon Securities, Inc. (Thomson), a securities brokerage firm, and its former customers, the defendants, arose as a result of two accounting mistakes by Thomson. Because the errors were not seasonably discovered, charges against the defendants' account were not made until after the account had been closed. When the defendants refused to pay the sums claimed by Thomson, the latter demanded arbitration pursuant to the contract. The arbitrators awarded Thomson both compensatory and punitive damages, and the award was confirmed by a judgment of the Superior Court.

In their appeal from that judgment, the defendants challenge the arbitrators' power to award punitive damages and also complain of certain alleged irregularities in the arbitration process. We find no error in the procedure, but agree with the defendants that punitive damages may not be awarded. Accordingly, we vacate the judgment insofar as it confirms the punitive damage award.

The contract, executed in 1986, is in the form of a signature card and provides that the "agreement and its enforcement shall be governed by the laws of the State of New York" and that "any dispute" between the parties "which does not arise out of the federal securities laws shall be resolved by arbitration under the Constitution and Rules of the New York Stock Exchange, Inc. [NYSE] or [at the election of Thomson] under the Code of Arbitration Procedures of the National Association of Securities Dealers, Inc."

Under New York law, as previously indicated, arbitrators may not award punitive damages. *Garrity* v. *Lyle Stuart, Inc.*, 40 N.Y.2d at 356-357. The parties seem in agreement that the NYSE rules were silent[2] with regard to the power of

---

[2]Our decision is based on the record before us. For agreements executed after September 7, 1989, the NYSE rules, if introduced in evidence, may require a different construction. See NYSE Rule 636(d)&(e) (1990), 2 N.Y.S.E. Guide (CCH) par. 2636, at 4328 (1992). See also Self-Regula-

arbitrators to award punitive damages, see also *Fahnestock & Co. v. Waltman*, 935 F.2d 512, 519 (2d Cir.), cert. denied, 112 S. Ct. 380 (1991), although the defendants and Thomson draw different conclusions from such silence — the defendants that an award of punitive damages is precluded; Thomson that such an award is permitted.[3]

Thomson urges that the matter is governed by the FAA and that New York law is not dispositive. Although there is language supporting this view, see *Raytheon* v. *Automated Bus. Sys., Inc.*, 882 F.2d 6, 9 (1st Cir. 1989); *Todd Shipyards Corp.* v. *Cunard Line, Ltd.*, 943 F.2d 1056, 1061-1062 (9th Cir. 1991); *Bonar* v. *Dean Witter Reynolds, Inc.*, 835 F. 2d 1378, 1387 (11th Cir. 1988), those cases, as will be discussed below, are distinguishable for the reason, among others, that different agreements to arbitrate were there involved. More recent, and in our view more persuasive, authority would not permit punitive damages in this case.

The leading discussion of preemption in this area is found in *Volt Information Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474-476 (1989). In upholding the application of a California statute which, unlike the FAA, contained a provision allowing a court to stay arbitration pending resolution of related litigation, *id.* at 470, the court rejected the argument that incorporating the California arbitration rule into the contract "violates the settled federal

tory Organizations; Order Approving Proposed Rule Changes by the New York Stock Exchange, Inc., National Association of Securities Dealers, Inc., and the American Stock Exchange, Inc. Relating to the Arbitration Process and the Use of Predispute Arbitration Clauses, Exchange Act Release No. 26805, [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) par. 84,414, at 80,099 & 80,113 (May 10, 1989).

[3]To buttress its argument that the rules of the NYSE authorize such damages, Thomson points to the award form used by NYSE arbitrators, which has a space for the entry of "punitive" damages. As stated in *Fahnestock & Co.* v. *Waltman*, 935 F.2d at 519, the award form is not part of the arbitration agreement. Moreover, NYSE arbitrations occur throughout the country, and, therefore, a holding that an award of punitive damages is not a permitted arbitral remedy in a contract governed by New York law "does not mean that in those states in which arbitral punitive damages awards are permitted, arbitrators may not appropriately utilize the punitive damages section of the award form." *Ibid.*

rule that questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration." *Id.* at 475. While due regard must be given to that policy "and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration, . . . [i]nterpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration — rules which are manifestly designed to encourage resort to the arbitral process — simply does not offend the rule of liberal construction . . . nor . . . any other policy embodied in the FAA." *Id.* at 476.

The court pointed out that the FAA "contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 477. Rather, the act (9 U.S.C. § 4 [1988])[4] "confers only the right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement*' " (emphasis in original) (citations omitted). *Id.* at 474-475. The principal purpose of the FAA is to ensure "that private arbitration agreements are enforced according to their terms." *Id.* at 478.

The United States Court of Appeals for the Second Circuit, in two recent cases citing *Volt, supra,* held that Federal preemption did not preclude the application of the New York *Garrity* rule (40 N.Y.2d at 356-357) against punitive dam-

---

[4]Section 2 of the FAA, 9 U.S.C. § 2 (1988), provides, in relevant part, that a written provision in a contract involving interstate commerce in which the parties agree to submit a controversy to arbitration "shall be valid, irrevocable, and enforceable . . . ."

Section 4 of the FAA, 9 U.S.C. § 4 (1988), provides in relevant part that a party aggrieved by an alleged failure to arbitrate under such an agreement may petition a United States District Court having jurisdiction under Title 28 "for an order directing that such arbitration proceed in the manner provided for in such agreement." Whereas § 2 is applicable in State as well as Federal court, whether § 4 is also applicable to State courts remains an open question. See *Volt, supra* at 477 n.6. The court did not have to decide this question as the majority concluded that, even if §§ 3 and 4 of the FAA were fully applicable in State court proceedings, the California statute permitting a stay of arbitration could be applied because the parties had agreed to arbitrate in accordance with California law. *Id.* at 477.

ages and that an award of such damages exceeded the powers of the arbitrators. In the first, *Fahnestock & Co.* v. *Waltham*, 935 F.2d at 517-519, a diversity case, the court held that where the NYSE provisions which governed the arbitration were silent as to the power of the arbitrators to award punitive damages, there was no conflict between the FAA and the *Garrity* rule. Even in the absence of a choice-of-law provision, the New York rule was held to apply. *Fahnestock*, 935 F.2d at 517.

In *Barbier* v. *Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121-122 (2d Cir. 1991),[5] the agreement, unlike the contract in *Fahnestock*, specifically stated that it was to be governed by New York law and also provided, as in *Fahnestock*, that disputes were to be resolved by arbitration in accordance with the NYSE rules. The *Barbier* court did not base its result on diversity, as had *Fahnestock*, but rather, citing *Volt*, 489 U.S. at 479, relied on the agreement of the parties to be bound by New York law. "The application of *Garrity* here is not in derogation of the parties' agreement but rather in accordance with that agreement. 'Where . . . the parties have agreed to abide by [New York law], enforcing [that law] according to the terms of the agreement is fully consistent with the goals of the FAA,' even if the result is that punitive damages are prohibited where in the absence of the choice-of-law provision, they would be permitted." *Barbier* v. *Shearson Lehman Hutton, Inc.*, 948 F.2d at 122.

The cases relied on by Thomson are either superseded, see note 5, *supra*, or are, for the most part, distinguishable as based on arbitration agreements which were read to authorize an award of punitive damages. Since the reasoning of those cases, however, suggests a different characterization of punitive damages under *Volt*'s preemption analysis, we

---

[5]In its brief before this court, Thomson relied on the *Barbier* decision in the District Court, describing it as one "precisely on point with the instant case." Subsequent to the filing of Thomson's brief, the Second Circuit, in the opinion cited in the text accompanying this footnote, reversed the District Court and ruled that an award of punitive damages was beyond the powers of the arbitrators.

briefly mention their underlying rationale to indicate why we consider the *Barbier* case, *supra,* more persuasive.

In *Raytheon Co.* v. *Automated Bus. Sys., Inc.,* 882 F.2d at 7, the agreement provided that California law would govern the interpretation of the contract and that arbitration was to be conducted according to the rules of the American Arbitration Association (AAA). Those rules empower the AAA arbitrators "to grant any remedy or relief which is just and equitable and within the terms of the agreement of the parties," a provision which the court construed to be broad enough to encompass an award of punitive damages. *Id.* at 9-10. The *Raytheon* court upheld the punitive award without looking to the choice-of-law provision of the contract. *Id.* at 11 n.5. In so holding, the court relied on the parties' adoption of the AAA rules, particularly the rule quoted in the text above, and "the general canon that federal law governs the construction of arbitration agreements respecting interstate commerce." *Id.* at 11 n.5. The First Circuit distinguished *Volt* by saying that there State procedural rules concerning arbitration were at issue, while in the *Raytheon* case the scope of the arbitration clause, that is, whether it encompassed punitive damages, was at stake. *Id.* at 11-12 n.5. It should be noted that in *Raytheon,* the appellant conceded that Federal law controlled. *Id.* at 12 n.5.

*Todd Shipyards Corp.* v. *Cunard Line, Ltd.,* 943 F.2d 1056 (9th Cir. 1991), involved a contract incorporating the AAA rules and containing a choice of New York law provision. Although distinguishable from the present case on the ground of the AAA rule, the case upheld a punitive damage award because "federal rules, rather than New York state rules apply. The Supreme Court has said time and again that issues of arbitrability in cases subject to the Act are governed by federal law." *Id.* at 1062. The *Todd* court thus viewed the issue of punitive damages as had the *Raytheon* court, namely, as a question involving the scope of arbitration. To similar effect is a case preceding the *Volt* decision, *Bonar* v. *Dean Witter Reynolds, Inc.,* 835 F.2d at 1387.

These three cases, *Raytheon, Todd*, and *Bonar*, differ from the case at bar because in those cases the arbitration agreements incorporated the AAA rules, not the less explicit ones of the NYSE. Moreover, it is not self-evident that the question of punitive damages involves the scope of arbitration. Whether punitive damages may be awarded is not an issue in the underlying dispute; it is, rather, a question of available remedies. For a fuller discussion of this point, see Fletcher, Arbitrating Securities Disputes § 12.1[2][c][i], particularly at 359-360 (1990). Rules governing remedies may be analogous to those governing the conduct of arbitration which were upheld in *Volt*. In any event, we read *Volt* and the FAA as permitting the application of the *Garrity* rule where, as here, the arbitration agreement does not explicitly or by incorporation authorize the award of punitive damages.

Accordingly, we follow the authority of *Barbier*, 948 F.2d at 122, the case most similar to the one at bar, and hold that the resort to New York law is not in derogation of but rather in accord with the parties' agreement. By virtue of the choice-of-law provision of the contract, the remedy of punitive damages was prohibited. Accordingly, the award of punitive damages must be vacated as in excess of the arbitrators' authority.[6]

We turn to the procedural claims of the defendants. They argue that one of the arbitrators should have been removed for cause because he was employed by Shearson Lehman Brothers in its Boston office and the plaintiff's counsel's firm represented Shearson's New York office on a number of collection matters. No one in the law firm had been involved with the Boston office of Shearson nor had there been any contact by anyone in that firm with the Shearson employee. The question whether there was a conflict was considered prior to the hearing by counsel for the NYSE and was recon-

---

[6]Although Claire Cucchitti did not appear in the arbitration proceeding, we have discretion to consider the issue as applicable to her where injustice might otherwise result. See *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, 401 Mass. 155, 163 (1987). We exercise that discretion and vacate the award of punitive damages as against both defendants.

sidered by the Arbitration Department of the NYSE at the request of the arbitration panel prior to proceeding with the hearing. There was no error or abuse of discretion in the rejection of the defendants' allegations (even assuming they were properly raised), and the claim presents no basis for vacating the award.

The defendants' remaining contentions as to procedural irregularities are similarly without merit. That Cucchiella (who appeared without representation) walked out of the hearing, thereby preventing a timely and proper consideration of his own evidentiary arguments, is dispositive of most of his claims.

The judgment is vacated, and a new judgment is to be entered vacating the award of punitive damages and confirming the remaining portions of the arbitration award.

*So ordered.*