**OTTAWA OFFICE INTEGRATION INC., Plaintiff,**

v.

**FTF BUSINESS SYSTEMS, INC. and Martin A. Burke, Defendants.**

**No. 99 CIV.11121(SHS).**

United States District Court, S.D. New York.

Feb. 21, 2001.

---

Bud G. Holman, Kelley, Drye & Warren, L.L.P., New York City, for plaintiff.

## OPINION & ORDER

STEIN, District Judge.

Ottawa Office Integration Inc. moves, pursuant to Fed.R.Civ.P. 81(a)(3) and 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA"), to confirm two arbitration awards, and defendants FTF Business Systems, Inc. and Martin Burke move, pursuant to New York law and 9 U.S.C. § 10 of the FAA to vacate those awards. FTF and Burke contend that the arbitrator committed misconduct when he denied their request for an adjournment based on the ill health of their primary witness. The motion to confirm the arbitration awards is granted and the motion to vacate the awards is denied on the grounds that the arbitrator had a "reasonable basis" for denying the adjournment because defendants repeatedly failed to provide adequate evidence to support their witness's asserted unavailability.

## BACKGROUND

In November of 1999, Ottawa filed this diversity action for breach of contract alleging that FTF and Burke did not pay Ottawa for computer equipment it had delivered pursuant to a contract and a guaranty agreement. The contract provides in part that "This Agreement shall be governed by, and construed and interpreted in

accordance with the laws of the State of New York. Both parties agree to submit disputes to a mutually agreed upon arbitration Mediator." (Steinberg Aff. Ex. A at 4b ¶ 4.) The guaranty agreement provides in part that "Any disagreement or enforcement of this Guaranty will be subject to the New York State Arbitration rules. Any decision rendered pursuant to their ruling shall be final and binding." (*Id.* at 5 ¶ E.)

After this action was commenced, FTF and Burke moved to dismiss the complaint in favor of arbitration. The action was referred to the court annexed mediation office for voluntary mediation. As a result of that process, the parties agreed in writing to "proceed to final and binding arbitration as promptly as possible of all claims and counterclaims arising out of the contract and guarant[y] in dispute here." (Steinberg Aff. Ex. B ¶ 1.) The stipulation that embodied that agreement and was "so ordered" by this Court on February 3, 2000, also provided that "This Court shall retain jurisdiction over this action for any future proceedings arising out of this arbitration." (*Id.* at ¶ 2.) Because the parties were unable to agree on an arbitrator, the Court, pursuant to the stipulation, appointed Ronald Meister, Esq. to arbitrate the dispute. (Steinberg Aff. Ex. C.)

On March 31, 2000, the parties "confirm[ed] their submission to binding arbitration" in a document entitled "Arbitration Agreement" and provided, in relevant part, that "[The arbitration] shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1–16." (Steinberg Aff. Ex. D.) [1]

The arbitrator scheduled a hearing for May 2 and 3. One week before it was to take place, FTF and Burke requested an adjournment because Burke—a party and defendants' primary witness—was ill. (Holman Aff. Ex. K.) They submitted a letter on a plain sheet of paper without

letterhead from a Dr. Alexander Chen that Burke had been diagnosed in 1995 with Wegener's Granulomatosis, which means that "he has an overactive immune system." (*Id.*) The arbitrator granted the requested adjournment and rescheduled the hearing for June 6 and 7. (Holman Aff. Ex. Q.) He also ordered that any further requests for adjournments based on Burke's health be accompanied by "a physician's affidavit describing Mr. Burke's diagnosis, any reason(s) he cannot travel or testify, his prognosis, and a clear statement of the date by which it is anticipated he will be able to travel and testify," relevant medical records, and "a waiver of Burke's physician-patient privilege sufficient to permit complainant and the [arbitrator] to review and inquire into Mr. Burke's medical records, physical condition and ability to travel and testify." (*Id.*) In addition, FTF and Burke were directed to give notice on or before May 26 if they believed that Burke would be unable to participate in the June hearing. In that case, the arbitrator wrote that he would conduct "an evidentiary hearing" to determine Burke's competency to testify. (*Id.*)

A few days later, the arbitrator granted Ottawa's request for a further adjournment so that Ottawa's counsel could attend his daughter's college graduation. (Holman Aff. ¶ 26, Ex. R.) The hearing was moved, with the consent of the parties, to June 28 and 29.

The day before the hearing, FTF and Burke again requested an indefinite adjournment based on the stated fact that Burke's "medical condition has deteriorated" and "his doctors are attempting to stabilize his condition." (Holman Aff. Ex. X.) The request did not include any description of his condition or supporting information, despite the arbitrator's earlier ruling. Ottawa alleged that Burke was not as sick as he claimed and opposed any further adjournments on the grounds that

---

1. Although that document is signed by counsel for FTF and Burke but not by counsel for Ottawa, FTF and Burke subsequently confirmed in a court submission that all parties had entered into the "Arbitration Agreement." (Holman Aff. Ex. EE ¶¶ 8, 27.)

it was the day before the hearing was to take place and: (1) three of its witnesses had arrived in New York from Canada to testify, (2) Burke had submitted no substantiation for his "condition" and, (3) he, in fact, had been well enough to discuss settlement issues with a representative of Ottawa only four days earlier. (Holman Aff. Ex. Y.) The arbitrator denied the adjournment. (Holman Ex. AA.)

At the beginning of the hearing the next morning, FTF and Burke renewed their request for an open-ended adjournment and submitted two letters from Dr. Chen: the first had been previously submitted with the April 26 adjournment request, and the second was undated and again without letterhead. The letters stated that the doctor has advised Burke to "rest at home and avoid any stressful situations." (Holman Aff. Ex. K, BB.) Neither letter was in the form of a sworn affidavit as directed by the arbitrator. (Holman Aff. Ex. K, BB, CC at 5.) FTF and Burke objected to the arbitrator's requirement that Burke waive his physician-patient privilege and turn over his medical records. (Holman Aff. Ex. CC at 8–9.)

The arbitrator denied the renewed request for an adjournment on the grounds that: (1) FTF and Burke did not give proper notice as previously ordered, (2) they did not submit any credible medical evidence, and (3) the submitted letters were vague in describing Burke's asserted inability to testify. (Holman Aff. Ex. CC at 19, 20, DD at 343.) The arbitrator nonetheless ruled that he would leave the record open until August 11 to allow FTF and Burke to supplement the record with oral or written testimony from Burke, provided that they supplied a physician's affidavit and relevant medical records by July 12. (Holman Aff. CC at 20, DD at 334–35.)

FTF and Burke produced only one witness at the June 28 and 29 hearing. That witness testified that she spoke on the telephone to Burke about work-related matters "a few times" a day. (Holman

Aff. Ex. DD at 311.) Indeed, she had spoken to him "four [or] five times" on the very day of the hearing. (*Id.* at 310.) She also testified that Burke had been in the office "a couple of weeks" before the hearing. (*Id.* at 311.) That witness finished testifying at 3 p.m. FTF and Burke then requested another adjournment because there was not enough time for them to put on the rest of their case. They stated that they had not brought additional witnesses to the hearing that day because they believed the completion of Ottawa's case was going to take more time than it did. Ottawa had represented on the first day of the hearing that it had two witnesses for the second day; however, one of those witnesses was called away on business and could not attend. (*Id.* at 344–45.) The arbitrator denied defendants' request for a further adjournment "for any purpose other than offering the testimony of Mr. Burke if [defendants] establish that he [was] physically incapable of testifying earlier." (*Id.* at 345–46.)

On July 12—the deadline the arbitrator had set for FTF and Burke to substantiate Burke's medical condition—they failed to produce any such substantiation and instead filed a petition in New York Supreme Court to stay the arbitration proceedings and to disqualify the arbitrator on the grounds that the arbitrator had committed misconduct when he refused to grant an adjournment based on Burke's illness and when he requested that both parties pay the arbitrator's estimated fees and costs in advance of the hearing. (Holman Aff. Ex. EE ¶ 4.) Justice Carol E. Huff granted the stay. Ottawa then removed the petition to the United States District Court for the Southern District of New York and U.S. District Judge Richard Berman vacated the stay. (*FTF Bus. Sys., Inc. & Martin Burke v. Ottawa Office Integration, Inc.,* 00 Civ. 5225(RMB), Memo Endorsement dated July 25, 2000.)

In September 2000, the arbitrator awarded Ottawa compensatory damages of $780,035.57 in Canadian dollars, plus inter-

est at the rate of 2% per month from April 1, 1999. One month later, he issued a supplemental award of $129,794.31 in U.S. dollars for attorneys' fees and costs. The parties subsequently made their respective motions.

## DISCUSSION

### Choice of Law

■ The parties disagree about what law applies to this case. Ottawa contends that the FAA applies while FTF and Burke believe that New York arbitration law applies. The Court will apply the FAA to this review because this is a diversity case that involves interstate commerce and because the Arbitration Agreement specifically provides for the FAA to govern the arbitration.

"The FAA applies when there is federal subject matter jurisdiction, i.e., diversity jurisdiction...and when the contract calling for arbitration evidences a transaction involving interstate commerce." *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir.1991) (citing 9 U.S.C. § 2). In this case, federal jurisdiction is based on diversity of citizenship of the parties— Ottawa is a Canadian corporation with its principal place of business in Canada and defendants are citizens of New York State. (Steinberg Aff. Ex. E ¶¶ 4–6.) In addition, the contract involves a transaction between a Canadian company and New York company. The computer equipment was delivered from Canada to several different states. Clearly this contract "evidences a transaction involving interstate commerce."

■ "Parties are generally free to structure their arbitration agreements as they see fit." *Barbier*, 948 F.2d at 122. Here, the parties specifically agreed in the Arbitration Agreement dated March 31, 2000, that "[The arbitration] shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1–16." This Arbitration Agreement was executed after the signing of the original contract and guaranty. It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supercedes the old agreement. *See NLRB v. International Union of Operating Eng'rs*, 323 F.2d 545, 548 (9th Cir.1963) ("Since the contracts were entered into by the same parties and cover the same subject matter, it is a well settled principle of law that the later contract supercedes the former contract as to inconsistent provisions.") (citing Restatement, Contracts § 408 (1932)); *Marine Transport Lines, Inc., v. International Organization of Masters, Mates, & Pilots*, 696 F.Supp. 1, 17.

Furthermore, the Arbitration Agreement was signed by defendants' counsel and relied upon by the defendants in their petition in New York Supreme Court for an order disqualifying the arbitrator and staying the arbitration. (Holman Aff. Ex. EE ¶¶ 8, 27.) FTF and Burke cannot, on the one hand, argue that the agreement applies and then, on the other, ignore its existence. They also fail to offer any grounds for finding that the Arbitration Agreement is not valid. Thus, the Court finds that the provision in the Arbitration Agreement that the arbitration "shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1–16" requires the Court to apply the FAA in reviewing these motions. *Cf. A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318, 320 (2d Cir.1974); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1064 (2d Cir.1993).

### Standards of Review

Arbitration awards are subject to "very limited review" in order that "the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation" are not undermined. *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993). "The award may be vacated only if at least one of the grounds 'specified in 9 U.S.C. § 10 is found to exist." *Barbier*, 948 F.2d at 120. The party seeking vacatur of the award has the burden of proof. *See Willemijn Houdstermaatschappij, B.V. v. Standard*

*Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997).

Section 10 of the FAA sets forth the limited grounds available to vacate an arbitration award, including "where the arbitrator[ ] [was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Agarwal v. Agrawal*, 775 F.Supp. 588, 589 (S.D.N.Y. 1991) (citing *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 40, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). If, however, there exists "a reasonable basis for the arbitrators' considered decision not to grant a postponement," a court should be reluctant to interfere with the award. *Roche v. Local 32B–32J Service Employees Int'l Union*, 755 F.Supp. 622, 625 (S.D.N.Y.1991); *see also Storey v. Searle Blatt Ltd.*, 685 F.Supp. 80, 82 (S.D.N.Y. 1988).

**Application of the "reasonable basis" test**

Courts have found a "reasonable basis" for denying an adjournment of an arbitration hearing in circumstances similar to these. For example, in *Storey*, the respondent requested an adjournment on the morning of the hearing due to a death in the family of a primary witness. The arbitrators denied the request because the hearing had already been adjourned twice before, the matter had been pending for more than a year, one of the petitioner's witnesses had to travel from the Virgin Islands to attend the hearing, and the respondent had failed to explain why another representative of the company could not be present. The district court found that the arbitrators had a "reasonable basis" for denying an adjournment. *Storey*, 685 F.Supp. at 82. *See also Roche*, 755 F.Supp. at 624–25; *C.T. Shipping, Ltd. v. DMI, Ltd.*, 774 F.Supp. 146, 149–50 (S.D.N.Y.1991) (finding arbitrators' denial of adjournment reasonable when panel had already granted a two-month adjournment for this particular witness and respondent's request was for an unspecified amount of time); *Agarwal*, 775 F.Supp. at 590–91.

■ In this case, the arbitrator had a "reasonable basis" for denying FTF and Burke's request to adjourn the hearing due to Burke's alleged, but unsubstantiated, ill health. As in *Storey*, the hearing had already been adjourned twice before and Ottawa's witnesses had to travel from Canada to attend the hearing in New York. The request was also for an unspecified amount of time, as in *C.T. Shipping*. In addition, the arbitrator had already granted an adjournment on account of Burke's purported ill health, even though Burke had been ill—but presumably functioning in his business—since 1995 and the initial request came just one week before the scheduled hearing.

■ The arbitrator had good reason to require credible medical evidence before granting another adjournment requested one day before the hearing because Ottawa had learned that Burke had been conducting business discussions over the telephone, which implied that Burke was not as sick as he claimed to be. It is well settled that a party waives his doctor-patient privilege when he puts his medical condition into issue. *See In re Agent Orange Product Liability Litigation*, 91 F.R.D. 616, 618 (E.D.N.Y.1981); *Crawford v. Manion*, 1997 WL 148066, at *3 (S.D.N.Y. March 31, 1997). An arbitrator can formulate such procedures as he sees fit as long as the proceedings are not "fundamentally unfair." *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir.1997) ("Federal Courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair."); *National Broadcasting Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 186.

Moreover, the arbitrator was willing to accept post-hearing submissions from Burke and hold another day of live testimony, even after learning from defendants' own witness that Burke was able to go to the office just "a couple of weeks" before the hearing and that Burke had conducted business with the witness over the telephone on the very day of the hearing. Given the repeated refusal of defendants to comply with the arbitrator's directives, the arbitrator could reasonably conclude that defendants' request for an adjournment was not based on Burke's poor health but rather was an attempt to "to delay the hearings unnecessarily." *C.T. Shipping,* 774 F.Supp. at 149. The issue is not whether this Court would have acted in the same manner, but rather whether the arbitrator had a "reasonable basis" for denying the requested adjournment. He did.

FTF and Burke's reliance on *Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16 (2d Cir.1997) for the proposition that the arbitrator did not have a "reasonable basis" to deny the adjournment is misplaced. In that case, the former president of the defendant's company suddenly become temporarily unavailable to testify because his wife had been diagnosed with cancer. The arbitration panel concluded the hearings without waiting for his testimony because they believed it would be cumulative. In its motion to vacate, the defendant included an affidavit stating what the witness would have testified to, if permitted. The Second Circuit found that "there was no reasonable basis for the arbitration panel to determine that [the witness's] omitted testimony would be cumulative." *Id.* at 20.

Here Burke's ill health was not an unexpected occurrence. After granting one adjournment, the arbitrator set out a procedure for Burke to follow in order to justify another adjournment. Burke failed to comply with any aspect of that procedure. The arbitrator specifically stated he would accept into the record an affidavit stating what Burke would have testified to, if Burke had only substantiated his alleged medical condition. Finally, the arbitrator did not deny the adjournment based on an erroneous conclusion concerning the significance of Burke's testimony, but rather for his failure to demonstrate the reason he could not attend the hearing.[2]

■ FTF and Burke's other claim for misconduct based on the denial of an adjournment for defendants to produce witnesses other than Burke is without merit. The parties had ample notice of the dates of the hearing, and FTF and Burke did not offer any reason why these other witnesses could not attend the hearing on those dates. The arbitrator had a reasonable basis for his decision. *See, e.g.,* Dan River, Inc. v. Cal–Togs, Inc., 451 F.Supp. 497, 503 (S.D.N.Y.1978).

## CONCLUSION

Because the arbitrator had a "reasonable basis" for denying FTF and Burke's requests for an additional adjournment, plaintiff's motion to confirm the arbitration award and supplemental award is granted and defendants' motion to vacate the awards is denied.

SO ORDERED.

---

**2.** It is worth noting that even if New York arbitration rules applied to this case as FTF and Burke contend, their motion to vacate would still be denied because they "failed to carry [their] burden to establish misconduct on the arbitrator['s] part sufficient to vacate the award. Such a finding of misconduct would require a determination that the arbi-

trator[ ] had abused [his] discretion." *Doris Trading Corp. v. Melody Knitting Mills, Inc.,* 172 A.D.2d 399, 400, 568 N.Y.S.2d 779, 780 (1st Dep't 1991) (finding no abuse of discretion when the arbitrators denied a request for an adjournment based on the attorney's ill health because the request was not supported with competent documentation).