### In the Matter of the Arbitration Between George BISNOFF, Petitioner,

v.

### Taylor KING, Respondent,

### No. 00 CIV. 5342 DAB.

United States District Court, S.D. New York.

July 5, 2001.

---

Bondy & Schloss LLP, New York, Jacqueline I. Meyer, Esq., for Petitioner.

Madox Koeller Hargett & Caruso, New York, Steven B. Caruso, Esq., Blank Rome Tenzer Greenblatt LLP, New York, David S. Richan, Esq., for Respondent.

### MEMORANDUM & ORDER

BATTS, District Judge.

Petitioner brought this action to vacate an arbitration award granted by the National Association of Securities Dealers, Inc. ("NASD"). Petitioner asserts that pursuant to N.Y. CPLR § 7511(b)(1) the award should be vacated. Petitioner argues the Panel engaged in misconduct by failing to grant his request for postponement of the arbitration hearing, thereby substantially and irreparably prejudicing him by foreclosing him from presenting material and pertinent evidence at the hearing. (Pet. to Vacate ¶ 28.) In addition, Petitioner also alleges that the award should be vacated in accordance with Section 10(a)(3) of the Federal Arbitration Act, 9 U.S.C. § 10 ("the Act"). Respondent opposes Petitioner's application for vacatur and seeks "such additional and other relief as the Court may deem just, proper and equitable." Resp. Mem. Law at 13.

For the reasons set forth below, the Court DENIES Petitioner's Application for Vacatur and CONFIRMS the award in its entirety.

### I. BACKGROUND

Petitioner, George O. Bisnoff is a resident of Nassau County, New York. (Pet. to Vacate ¶ 1.) During the time period relevant to this proceeding, he was employed by Whale Securities Co., L.P. ("Whale") as a registered representative for the transaction of business in Whale's New York County Office. (Pet. to Vacate ¶ 1.) Respondent, Taylor King, is the widower of Mary Lou King and the Executor of the decedent's estate. (Pet. to Vacate ¶¶ 2–6.)

During September 1995, Mary Lou King opened a brokerage account at Whale ("the Account"). The account was located in New York County. (Pet. to Vacate ¶ 5.) Petitioner was the registered representative at Whale for the account.

At all times relevant to the issues before this Court, Mary Lou King resided in North Carolina. (Resp. Opp. to Pet. at 2.) According to Petitioner, Mary Lou King signed a customer agreement with Whale providing that disputes between her and Whale would be submitted to arbitration and that New York law would govern the substantive aspects of such disputes. (Pet. to Vacate ¶ 2.)

During May 1999, Taylor King commenced an arbitration proceeding before a NASD Arbitration Panel ("the Panel") against Bisnoff, Whale, and its officers. Taylor King alleged that Bisnoff and Whale had wrongfully engaged in the securities business in North Carolina without having been licensed there and effectuated improper, unsuitable, and excessive transactions in the account of the decedent resulting in losses. Specifically, Bisnoff was personally alleged to have effectuated approximately 321 improper, unsuitable and excessive transactions in the account of the decedent, resulting in losses of approximately $385,000. King also alleged that Bisnoff made material misrepresentations of fact to the decedent upon which she reasonably relied. In addition, King alleged that Bisnoff improperly received, directly from the decedent, approximately $95,000 in cash and wrongfully named himself as the sole beneficiary of the decedent's SEP–IRA account ("IRA account") transferring approximately $137,000 of Mary Lou King's assets out of the IRA account into his own name. (Resp. Opp. to Pet. at 2.) This allegedly led to estate tax liabilities in the approximate amount of $14,555. (Award at 2.) Petitioner denies

each allegation. (Pet. to Vacate ¶ 9.) Claimant requested an award of $631,555 for compensatory damages and $1,700 punitive and other damages. (Award at 2.)

On October 18, all parties participated in a pre-hearing telephone conference in which the Panel scheduled the arbitration hearings for February 13–18, 2000 in Raleigh, North Carolina.[1] (Pet. to Vacate ¶ 10.) During the conference, Petitioner did not mention any physical ailments that might conflict with his ability to testify. (Pet. to Vacate ¶ 15.)

However, in late January 2000, Petitioner alleged he began to experience symptoms stemming from a heart attack he had suffered in September 1999. On January 27, 2000, two and one-half weeks before the scheduled hearing, Petitioner submitted a request to the Panel for "a postponement of the hearing because his cardiologist had advised him not to travel and to avoid physical and emotional stress." (Pet. to Vacate ¶ 11.) Bisnoff then informed the Panel that he had suffered a heart attack in September 1999, undergone two angioplasties, and recently suffered recurring symptoms. He explained that his cardiologist had advised him that his medical condition made him physically unfit to travel to or testify at the hearing or participate in any questioning that would cause him stress. (*Id.*) He submitted letters from his cardiologist documenting his claims, although these letters were not accompanied by any medical records explaining Bisnoff's condition or supporting the doctor's contentions. (Resp. Opp. to Pet., Ex 5 at 2).

Respondent King notified the Panel that he opposed Bisnoff's request for a postponement. (Pet. to Vacate ¶ 5.) In particular, Respondent opposed the postponement because Petitioner did not properly request it according to NASD Arbitration Rule 10319(b), which requires a deposit of a fee equal to the initial deposit of the hearing to be submitted along with the request for adjournment. (*Id.*) In addition, Respondent opposed the award because he anticipated that Petitioner would seek to postpone the hearing in a "last minute tactic of delay." (*Id.*).

On February 4, 2000, the Panel denied Petitioner's first request for a postponement, but allowed him to schedule and appear for a videotaped deposition, which the Panel would use as Petitioner's testimony. One week prior to the hearing, the Panel also ordered Petitioner to be available via telephone during the week of February 14–18 to answer any questions the Panel might have. (Pet. to Vacate ¶ 18.)

On February 7, one week before the scheduled hearing, Bisnoff requested in writing that the Panel reconsider its decision to deny postponement. On February 10, the Panel invited Petitioner to respond to certain questions in connection with his motion for reconsideration.[2]

---

1. Although the situs of the arbitration proceeding was North Carolina, venue is permitted in this district as the Federal Arbitration Act venue provision providing that application to confirm or vacate an arbitration be made to the United States court for the district wherein the award was made is permissive rather than exclusive. *Concourse Beauty School, Inc. v. Polakov*, 685 F.Supp. 1311 (S.D.N.Y.1988). Here, neither party has sought transfer and the Court's jurisdiction is otherwise proper.

2. In particular, the Panel requested a written prognosis of Petitioner Bisnoff's condition; an explanation as to why, if Petitioner's medical condition was as urgent as he claimed, his next medical evaluation was not scheduled until three months later; an explanation of how Bisnoff would be prejudiced if the hearing was not postponed; and a calculation of the total number of hours Petitioner was then working as a stock broker. *See* Pet. to Vacate, Ex. H.

On February 11, after receiving and reviewing Petitioner's responses, the Panel again denied Petitioner's request. (Pet to Vacate, Ex L at 1.) The Panel stated that its decision was partially based upon learning that, despite his illness, Bisnoff had been working approximately 30 hours per week as a stockbroker—a stressful occupation—and was therefore fit to participate in, at least, a videotaped deposition or provide telephonic testimony. (*Id.*)

Despite the Panel's presentation of alternatives, Petitioner advised the Panel, via letter, of his intention not to testify under any circumstances. Neither, Bisnoff, nor his attorney appeared at the hearing. (Resp. Opp. to Pet. ¶ 5.) Thus, the hearing proceeded without the participation or testimony of Bisnoff, the sole living witness with any personal knowledge regarding many of the issues before the Panel. (Pet. Mem. of Law. ¶ 26–30.)

On March 30, 2000 the Panel awarded Respondent $134,180 for which Whale Securities and Bisnoff are jointly responsible and an additional $224,017 for which Bisnoff is individually liable. (Award at 4.)

On June 29, 2000, within the three month limitations period imposed by the Federal Arbitration Act, 9 U.S.C. § 12, Petitioner filed notice of a petition to vacate the award pursuant to N.Y. CPLR § 7511(b)(1) in state court. Thereafter, on July 19, 2000, Respondent removed the petition to federal court pursuant to 28 U.S.C. §§ 1441 and 1446.

## II. DISCUSSION

### A. Applicable Law

Prior to removal from state to federal court, Bisnoff argued that, pursuant to N.Y. CPLR § 7511(b)(1), the arbitration "[p]anel engaged in misconduct by failing and refusing to grant Petitioner's reasonable postponement request, and substantially and irreparably prejudiced [him] by foreclosing him from presenting material and pertinent evidence at the hearing." (Pet. to Vacate ¶ 28.)

On July 19, 2000, Respondent filed his notice of Removal from the Supreme Court of the State of New York, County of New York, to the Federal District Court for the Southern District of New York. After removal, in his Reply Memorandum of Law, Bisnoff, claimed that the award should be vacated according to both Section 10(a)(3) of the Federal Arbitration Act, 9 U.S.C. § 10(a)(3), and N.Y. CPLR § 7511(b)(1). Bisnoff asserted that the Panel, in failing to postpone the hearing upon sufficient cause shown, and in refusing to hear evidence pertinent and material to the controversy, was guilty of "fundamental unfairness and misconduct sufficient to vacate the award." *See* Pet. Rep. Mem. at 2.

■ Judicial Review of arbitration awards is generally governed by the Federal Arbitration Act when (1) there is "subject matter jurisdiction i.e. diversity jurisdiction" and (2) "when the contract calling for arbitration involves a transaction involving interstate commerce." *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quoted in, *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 118 (2d Cir.1991)).

■ In this case, the Court has diversity jurisdiction as Bisnoff, is a citizen of New York, and Respondent King is a citizen of Virginia. Not. Removal ¶ 7. In addition, the amount in controversy is more than $75,000, the statutory minimum for diversity jurisdiction. *See* 28 U.S.C. § 1332. Further, securities dealings between diverse parties constitute "transactions involving interstate commerce." *See Barbier,*

948 F.2d at 118 (quoting, 9 U.S.C. § 2 (1994)).

In addition, in *Mastrobuono v. Shearson Lehman Hutton, Inc.,* the Supreme Court rejected Shearson's argument that a choice-of-law clause in an arbitration agreement evidenced an intent to apply New York State law on arbitrations. The Court stated:

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read [the phrase] 'the laws of the State of New York' to encompass substantive principles that New York Courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

*Mastrobuono,* 514 U.S. 52, 63–64, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

■ Thus, a standard choice-of-law provision in an arbitration agreement will not override the federal laws governing arbitration disputes without the express intention of the parties to apply state arbitration law.[3] Accordingly, because no express agreement between the parties requires application of state arbitration law, the FAA is the applicable law in this case.

### B. Standard for Vacatur Under the FAA

■ "Under the FAA, the validity of an [arbitration] award is subject to attack only on those grounds listed in [9 U.S.C.] § 10, and the policy of the FAA requires that the award be enforced unless one of those grounds is affirmatively shown to exist." *Wall Street Assoc. v. Becker Paribas Inc.,* 27 F.3d 845, 849 (2d Cir.1994). In addition, "[t]he showing required to avoid summary confirmation of an arbitration award is high, ... and a party moving to vacate that award has the burden of proof." *Willemijn Houdstermaatschappij, BV, v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997) (citations omitted).

■ Thus, it is well-settled under Second Circuit jurisprudence that a district court's review of an arbitration award is severely limited.[4] Arbitration awards are subject only to a "very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long expensive litigation." *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111 (2d Cir.1993).

■ The FAA provides that an arbitration award may be vacated if: (1) the

---

**3.** *See Id.; see also Volt Info. Sciences, Inc. v. Board of Trs. of the Leland Stanford Jr. Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (stating that the FAA does not always govern arbitration awards in cases of diversity of citizenship where the parties have agreed to abide by state arbitration rules); *Doctor's Assocs. Inc. v. Distajo,* 107 F.3d 126, 131 (2d Cir.1997) ("even the inclusion in the contract of a general choice-of-law clause does not require application of state law to arbitrability issues, unless it is clear that the parties intended state arbitration on a particular issue"); *National Fire Ins. Co. v. Belco Petroleum Corp.,* 88 F.3d 129 (2d Cir.1996) (declining to read a choice-of-law clause in a contract as incorporating New York State law

on arbitration); *Circle Industries USA, Inc. v. Parke Constr. Group, Inc.* No. 97 Civ. 3334(SJ), 1998 WL 713305 (E.D.N.Y. Oct.8, 1998) (same).

**4.** *See generally Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir.1987) ("the showing required to avoid summary confirmation is high"); *Americas Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985) (scope of review of an arbitration award is "very narrowly limited"); *Zephyros Mar. Agencies, Inc. v. Mexicana De Cobre, S.A.,* 662 F.Supp. 892, 894 (S.D.N.Y.1987) (district court review of arbitration award is "severely limited").

award was procured by corruption, fraud, or undue means; (2) the arbitrators exhibited "evident partiality" or "corruption"; (3) the arbitrators were guilty of misconduct; or (4) the arbitrators exceeded their power. *See* 9 U.S.C. § 10(a); *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 n. 2 (2d Cir.1998), *cert. denied*, 526 U.S. 1034, 119 S.Ct. 1286, 143 L.Ed.2d 378 (1999).

■ In the context relevant here, a court may vacate an award when "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy ..." 9 U.S.C. § 10(a)(3). "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Agarwal v. Agarwal*, 775 F.Supp. 588, 589 (S.D.N.Y.1991) (citing *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 40, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)).

■ The expeditious resolution of disputes requires that arbitrators be provided with broad discretion and great deference in their determinations of procedural adjournment requests. *See Alexander Julian, Inc. v. Mimco, Inc*, No. 00 Civ. 4131(DC), 2001 WL 477010, at *2 (S.D.N.Y. May 4, 2001) (citing *Tempo Shain*, 120 F.3d at 19; *Prozina Shipping Co. v. Elizabeth–Newark Shipping, Inc.*, No. 98 Civ. 5834, 1999 WL 705545, at *2–3 (S.D.N.Y. Sept.10, 1999)). In evaluating an arbitrator's decision to deny a postponement, courts consider whether there existed a reasonable basis for the arbitrator's decision and whether the denial created a "fundamentally unfair" proceeding. *See Ottawa Office Integration, Inc. v. FTF Bus. Sys., Inc.*, 132 F.Supp.2d 215, 220 (S.D.N.Y.2001) (citing *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir.1997); *Roche v. Local 32B–32J Service Employ-*

*ees Int'l Union*, 755 F.Supp. 622, 625 (S.D.N.Y.1991)).

■ Thus, if there exists " 'a reasonable basis for the arbitrators' considered decision not to grant a postponement,' a court should be reluctant to interfere with the award." *Ottawa*, 132 F.Supp.2d at 220 (quoting *Roche*, 755 F.Supp. at 625). Stated another way, as long as there is at least "a barely colorable justification" for the arbitrators' decision not to grant an adjournment, the arbitration award should be enforced. *Alexander Julian*, 2001 WL 477010, at *2 (citing *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir.1992)) (additional citations omitted).

■ In addition, an arbitrator's decision must not violate principals of fundamental fairness. *Tempo Shain*, 120 F.3d at 20. A fundamentally unfair proceeding may result if the arbitrators fail to "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Id.* (citing *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir.1985)). So long as an arbitrator's procedural decision is reasonable and fair, it should not be disturbed. *See Ottawa*, 132 F.Supp.2d at 220. As has been stated often, "... an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." *Roche*, 755 F.Supp. at 624 (quoting *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir.1974)).

### 1. *Petitioner's Claim of Misconduct*

Petitioner asserts that his heart condition constituted sufficient cause to postpone the hearing, and that the Panel's failure to grant that request constituted misconduct under the Act. Petitioner points to the Second Circuit case, *Tempo Shain Corp. v. Bertek, Inc., see infra*, to

support his claim. [5] *See* Pet. Rep.Mem. at 4. During the arbitration proceedings in that case, Bertek, a manufacturing company, intended to call a crucial witness, who became temporarily unable to testify because his wife was diagnosed with a reoccurrence of cancer. Bertek requested that the Panel keep "the record open until [the witness] could testify." *See Id.* The Panel refused to grant this request having concluded that the witness's testimony would have been cumulative. The district court ·affirmed the award and the Second Circuit reversed. In its decision the Second Circuit stated:

> [w]e find ... *no reasonable basis* for the arbitration panel to determine that Pollock's omitted testimony would be cumulative with regard to the fraudulent inducement claims. Said differently, the panel excluded evidence plainly 'pertinent and material to the controversy.' 9 U.S.C. § 10(a)(3).

*Tempo Shain,* 120 F.3d at 20 (emphasis added).

▇▇ Thus, the essential proposition for which *Tempo Shain* stands is that, absent a reasonable basis for its decision, a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the Federal Arbitration Act if it excludes the presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute and making the hearing fundamentally unfair.

▇▇ However, unlike *Tempo Shain,* the Panel's decision to deny an adjournment here was reasonable and did not preclude Petitioner from presenting evidence "pertinent and material to the controversy." 9 U.S.C. § 10(a)(3).

Here, the Panel articulated a clear and reasonable justification for its decision to deny the adjournment. In a letter to Petitioner, an arbitrator explained:

> The Panel has requested that I inform the parties that their decision was partially based on the fact that Mr. Bisnoff has been working approximately 30 hours per week in a position considered to be stressful. Therefore, the Panel believes that Mr. Bisnoff should be able to participate in a hearing, videotaped deposition, and/or telephonic testimony.

Pet., Ex. L.

Thus, it appears the arbitrators considered the stated reasons for Petitioner's adjournment request but came to an uncomplimentary assessment of his credibility and offered a reasonable justification for their decision. Simply, the Panel was not convinced that the Petitioner's medical claim was credible in light of the fact that Petitioner continued his employment as a stockbroker. *See* Pet. to Vacate, Ex. L. This Court is not empowered to second guess the arbitrators' assessment of credibility. *Areca, Inc. v. Oppenheimer & Co.,* 960 F.Supp. 52, 57 (S.D.N.Y.1997).

In addition, the facts before this Court provide ample circumstantial evidence sup-

---

5. In support of his motion, Petitioner also relies on New York case law. *See* Mem. Law at 10–14 (citing, *inter alia, Omega Contracting, Inc. v. Maropakis Contracting, Inc.,* 160 A.D.2d 942, 554 N.Y.S.2d 664 (N.Y.A.D.2d Dep't 1990) (reversing an arbitration award where the arbitrator had abused his discretion by denying the postponement of a hearing because appellant's principle had failed to appear due to a medical emergency involving his daughter)). However, to the extent the cases cited by Petitioner interpret the New York State arbitration statute, they are not controlling here. *See* discussion, *infra.* Further, under New York law an arbitrator's decision not to adjourn may be vacated only when it constitutes an abuse of discretion and forecloses presentation of all material and pertinent evidence. *Omega,* 554 N.Y.S.2d at 665. Thus, for the reasons stated herein, application of New York law would not change the outcome of this case.

porting the Panel's determination that Bisnoff's stated reason for an adjournment was not credible. The facts reveal that on October 18, 1999, a month after Bisnoff experienced his first heart attack, he participated in a scheduling hearing, but failed to mention to the parties or the Panel that he had suffered a heart attack or might have medical needs, which would need accommodation. *See* Pet. to Vacate ¶ 10. Thereafter, Bisnoff waited until just two and one-half weeks before the scheduled hearing before complaining to the Panel of recurring symptoms and requesting a postponement. *See* Pet. to Vacate ¶ 11. Although he submitted to the Panel, and to this Court, letters from his doctor explaining his condition, these letters are not supported by any medical records. *See* Pet to Vacate, Ex D, E, and J. In addition, at least one letter was submitted in response to sincere inquiries from the Panel suggesting that the Panel considered and took seriously his claim of medical need.

These events also occurred against the backdrop of Respondent King's serious allegations of fraud, which personally implicated Bisnoff in the wrongful taking and possession of at least $137,000 of the decedent's assets. *See* Pet. to Vacate, Ex B, Statement of Claim at 5.[6]

This circumstantial evidence lends credence to the notion that Bisnoff's assertion he could not participate in a hearing via videotape or telephone, even while he was working 30 hours per week as a stockbroker, was not credible. It also supports the Panel's reasonable determination, after full and fair consideration, that Bisnoff's request for postponement was merely a delay tactic, which should be denied.[7]

In addition, the Panel's decision not to delay the hearing was fundamentally fair. Apparently crediting Bisnoff's claim that he could not travel or be present during the hearing, the Panel provided Petitioner with an opportunity to appear via telephone or videotaped deposition. *See* Pet. to Vacate, Ex. F. Petitioner did not take advantage of either opportunity, nor did he send his attorney to represent him or speak on his behalf at the hearing. *See* Resp. Opp. to Pet. ¶ 39. Thus, Petitioner was unable to present evidence at the hearing as a result of his personal choice. Accordingly, given the options made available to Petitioner and the Panel's willingness to hear evidence via several alternative routes, the Court cannot conclude that the hearing was fundamentally unfair.

In short, the Panel offered a reasonable basis for its decision to deny the adjournment. *See* Pet. Mem. of Law., Ex L at 1. Further, the proceeding was fundamentally fair as the Panel permitted the presentation of all evidence "pertinent and material to the controversy." *Tempo Shain,* 120 F.3d at 20 (quoting 9 U.S.C. § 10(a)(3)).

---

6. In addition, although apparently not known to the Panel at the time of their decision, Bisnoff would soon face additional civil and criminal charges alleging he has engaged in a pattern of conducting his business affairs in violation of securities laws. *See* Resp. Opp. to Pet. ¶ 3 n. 1 (citing *In the Matter of Salvatore Piazza, et al.,* Exchange Act Release No. 42939 (June 14, 2000); *United States v. Robert J. Dacunto, et al.,* No. 00 Cr. 0620 (S.D.N.Y. June 14, 2000)).

7. Further, the Court notes that even now, Petitioner offers no clues as to what evidence

he might have offered in his defense, suggesting that this very motion may be yet another attempt to stall the proceeding. Indeed, it is apparent that the decision to bring the instant motion was contemplated at that time Petitioner elected not to appear by any means at the arbitration hearing. *See* Pet., Ex. M. (Ltr. dated Feb. 11, 2000 indicating Bisnoff would not participate in the hearing and would instead seek legal remedies against the Panel). Thus, it is not clear to the Court that Petitioner was prejudiced by his failure to participate.

Although Bisnoff did not offer evidence on his behalf, it is clear the Panel provided Petitioner with several less stressful alternatives, which he elected to ignore. The Court finds no misconduct on the part of the Panel. Accordingly, Bisnoff's petition to vacate the award is DENIED.

### 2. *Equitable Relief*

 "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir.1997) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)). While the award need not actually be confirmed by a court to be valid, a successful party to an arbitration may seek to confirm the award if "he fears the losing party will not abide by the award." *Florasynth*, 750 F.2d at 176.

Once the three month limitation period has run, the losing party to an arbitration may not move to vacate the award and a "successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." *Florasynth*, 750 F.2d at 177. In the instant case, Respondent has not specifically cross-moved for confirmation. Rather, Respondent seeks any "additional and other relief" the Court deems "just, proper and equitable." Resp. Mem. Law at 13. Thus, in the interest of judicial efficiency, and in light of the "quick and final resolution" contemplated by the arbitration mechanism, *id.*, the Court construes Respondent's papers as a cross-petition to confirm the award. Accordingly, Respondent's petition to confirm is GRANTED.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's Motion to Vacate the Arbitration Award and AFFIRMS the arbitration award in its entirety. The Clerk of the Court shall enter judgment accordingly

SO ORDERED.